**SOUTHEASTERN HUMAN DEVELOPMENT CORPORATION, a non-profit South Dakota Corporation, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of the Department of Health and Human Services, an agency of the United States of America; Harvey R. Vieth, Director of the Office of Community Services of the Department of Health and Human Services; the United States of America; William J. Janklow, Governor of the State of South Dakota; the South Dakota State Planning Bureau and Dana Nelson, Defendants.**

Civ. No. 81–3072.

United States District Court,
D. South Dakota, C.D.

April 21, 1983.

Jeff Masten, Canton, S.D., for plaintiff.

Dawn Bowen, Asst. U.S. Atty., Philip N. Hogen, U.S. Atty., Pierre, S.D., for Federal defendants.

Jeffrey P. Hallem, Asst. Atty. Gen., Mark V. Meierhenry, Atty. Gen., State Capitol, Pierre, S.D., for State defendants.

## MEMORANDUM OPINION

DONALD J. PORTER, District Judge.

Plaintiff brought suit in 1981 seeking an injunction enjoining federal and state defendants from expending funds allocated to the State of South Dakota under the Omnibus Budget Reconciliation Act (OBRA) of 1981, Pub.L.No. 97–35, Section 672(a) & (b), 95 Stat. 511 (1981), codified at 42 U.S.C. § 9901. After a hearing on plaintiff's motion for a preliminary injunction, this Court denied plaintiff's motion and dismissed the case. *Southeastern Human Development Corp. v. Schweiker,* 531 F.Supp. 440 (D.S.D. 1982).

The Eighth Circuit Court of Appeals held that this Court erred in its decision and remanded the case. *Southeastern Human Development Corp. v. Schweiker,* 687 F.2d 1150 (8th Cir.1982). On October 28, 1982, following the mandate of the Eighth Circuit, this Court amended its judgment to read:

> That the Secretary of Health and Human Services shall carry out his duty under Title XVII, Section 1743(b) of the Omnibus Budget Reconciliation Act of 1981, to distribute to the affected agencies the funds they would have received for the first two quarters of fiscal year 1982 pursuant to the repealed provisions of the Economic Opportunity Act of 1964.

In spite of the amended judgment, the "affected agencies" have still received no funds.[1] Plaintiff has filed a motion for a writ of sequestration and an order of contempt.

The chronology of events following the filing of this Court's amended judgment begins on November 9, 1982, when the Governor of the State of South Dakota contacted the federal defendants regarding the amended judgment. On November 22, 1982, the federal defendants made grants of $57,842 to Southeastern Human Development Corporation and of $48,257 to Greater Missouri Community Development Corpora-

---

1. At oral argument before this Court, the parties have agreed that "affected agencies" for the purposes of the amended judgment are Southeastern Human Development Corp. and Greater Missouri Development Corporation.

tion, and notified the Governor that they were funding the affected agencies. On the same day the federal defendants informed the Governor that he could veto the award within thirty days. The Governor exercised his veto of the grant award on December 17, 1982. On February 9, 1983, plaintiff filed its motion for a writ of sequestration and an order of contempt. On February 24, 1983, the federal defendants sustained the Governor's veto.

The statutory scheme enacted by Congress under OBRA provided that during the transition period between funding under the old regime of the Economic Opportunity Act (EOA) of 1964 and funding under the new order of OBRA, programs in states not qualifying for OBRA block grants would be governed by the provisions of the repealed EOA. The Governor interpreted the Eighth Circuit's mandate to mean that all the provisions of the EOA were incorporated into the transition provisions of OBRA. The sequence of events following the filing of the amended judgment was triggered by this interpretation. Under the provisions of the EOA, grants awarded by the Secretary were subject to the veto of the governor of the recipient's state. 42 U.S.C. § 2834. A governor's veto was subject to review by the Secretary, *id.*, and the Secretary was obligated to make some response, sustaining or overturning a governor's veto. *East Oakland-Fruitvale Planning Council v. Rumsfeld,* 471 F.2d 524, 529 (9th Cir.1972).

The parties have proceeded on the assumption that the Governor's interpretation is correct. The parties' briefs have argued the procedural adequacy of defendants' actions, whether the merits of the case justified the Governor's veto of the grants, whether the Secretary was justified in sustaining that veto, and the power of this Court to review the Secretary's action sustaining the veto. In that posture the question would present a difficult decision. A district court's power to review the Secretary's decision to sustain a governor's veto of EOA funds is limited. *East Oakland-Fruitvale Planning Council v. Rumsfeld, supra,* 471 F.2d at 534–35; *see also Apter v. Richardson,* 510 F.2d 351, 355 (7th Cir.1975) (Lay, J., sitting by designation).

On the other hand, the Governor vetoed the grant and the Secretary sustained that veto based upon events and conditions that occurred after the first two quarters of fiscal 1982. Moreover, the veto was sustained partly because plaintiff was underfunded. Plaintiff was underfunded because the Governor and the Secretary had conducted themselves in a way the Eighth Circuit had determined not to be consistent with the provisions of OBRA. The rationale for sustaining the veto is at best irrelevant and at worst suspect.

Resolving the questions raised by the parties is not necessary to resolve the problem raised by plaintiff's motion. The Governor in vetoing the grant assumed that all the grants were made under the auspices of the EOA. As the defendants have themselves stated, however, the authority for these grants is not the Economic Opportunity Act, but the Community Services Block Grant Act, 42 U.S.C. § 9901 et seq. of OBRA. These grants were transition grants, paid out only while the state's qualification to operate its block grants was pending. To determine how the funds were to be distributed during the transition period, the Court must look not to the provisions of the EOA but to the transition provisions of OBRA. This search is simplified by the gloss placed on those provisions by the Eighth Circuit in this case.

The Eighth Circuit interpreted §§ 682 and 1742–1743 of OBRA to mean that "the Secretary must continue to fund EOA grantees until a state 'qualifies' ... for the block grant." *Southeastern Human Development Corp. v. Schweiker, supra,* 687 F.2d at 1155. In reaching its interpretation, the Eighth Circuit was guided by the Secretary's own words: "'The Department will operate the programs replaced by each block grant generally in accordance with current policies until a state *qualifies* for the block grant.'" *Id.* (quoting Preamble, 45 CFR Section 96 (1981), 46 F.Reg. 48583, Oct. 1, 1981) (emphasis added by Eighth Circuit). During the transition period, the

operation of programs funded under the old EOA would be the responsibility of the Secretary alone. Further, "current policies," meaning the policies of the EOA, would only be "generally" applicable. Not all the provision of the EOA would apply. The Eighth Circuit therefore read OBRA (and the Secretary's initial interpretation of OBRA) to mean that during the transition period the Secretary would maintain the status quo until a state qualified for block grant funds. Those programs that had been receiving funds would continue to receive funds.

The Eighth Circuit reasoned that continued funding of categorical grant programs "is clearly more logical than for the Secretary to 'sit on' a state's community service funds for 1, 2 or 3 fiscal quarters while the state determines its proposed use of those funds." *Southeastern Human Development Corp. v. Schweiker, supra,* 687 F.2d at 1155–56. This reasoning contains a two-fold purpose. First, the community service groups should receive funding during the transition period. Second, the states should concentrate on qualifying for the block grants as quickly as possible. Construing the statute as the parties have construed it would have unduly burdened state governments. While shouldering the responsibility of reviewing each community service program for the purposes of vetoing fund allotments, state government would have been obligated to undergo the rigors simultaneously of qualifying for block grants. This double responsibility would have only delayed the full implementation of the statutory scheme. Such a construction is antithetical to the ends of the statute itself. The complexity, expense and delay of this litigation is an example of the folly of such a construction. Under the OBRA transition plan, each state governor had a chance to exercise a veto by qualifying the state for the OBRA block grant funds. Once the state qualified, the governor possessed enormous power to allocate the funds as he deemed fit.

The mandate of the Eighth Circuit must therefore be read to state that the Secretary was obligated to distribute the funds allocated under OBRA. The amount of the funds to be distributed was to be determined pursuant to the repealed provisions of the Economic Opportunity Act of 1964. The distribution was to be to the affected agencies and was not subject to the veto of the Governor of the state of South Dakota. Defendants have asserted that the funds are already sequestered; an order of the Court sequestering those funds is unnecessary. The funds, however, should be paid out. Plaintiff's motion for an order of contempt will be denied. The foregoing constitutes the Court's findings of fact and conclusions of law.