SOUTH EASTERN HUMAN DEVELOP-
MENT CORPORATION, a nonprofit
South Dakota corporation, Appellee,

v.

Margaret M. HECKLER, Secretary of the
Department of Health and Human Ser-
vices, an agency of the United States of
America; Harvey Vieth, Director of the
Office of Community Services of the
Department of Health and Human Ser-
vices; the United States of America;
William J. Janklow, Governor of the
State of South Dakota; the South Da-
kota State Planning Bureau and Dana
Nelson, Appellants.

Nos. 83–1585, 83–1823.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 14, 1983.

Decided April 10, 1984.

**584**

Jeff Masten, Masten, Myrabo, Irons & Kunstle, P.C., Canton, S.D., for appellee.

Mark V. Meierhenry, Atty. Gen., Jeffrey P. Hallem, Asst. Atty. Gen., Pierre, S.D., for appellants William J. Janklow, South Dakota Planning Bureau, Dana Nelson.

Before BRIGHT, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and HANSON,[*] Senior District Judge.

HANSON, Senior District Judge.

The plaintiff below, South Eastern Human Development Corporation, is a non-profit corporation that runs social service programs in South Dakota. Defendants below represent the State of South Dakota and the federal government. In the proceedings below, plaintiff sought to compel the federal government to provide it funding. The district court ordered the federal government to provide plaintiff $57,842. 560 F.Supp. 925. Defendants appeal. We vacate the district court's order and remand for further proceedings consistent with this opinion.

## I. FACTS

This case has a long history, including a prior appeal to this court. But to begin at the beginning: In fiscal year 1981 the plaintiff received federal funds under Title II of the Economic Opportunity Act of 1964 (EOA), 42 U.S.C. §§ 2701–2996*l* (1976) (repealed 1981). Title II of the EOA provided federal financial assistance directly to local "community action agencies" for social service programs. 42 U.S.C. §§ 2781, 2790, 2808 (1976) (repealed).

In 1981, Title II of the EOA was replaced with the Community Services Block Grant Program of the Omnibus Budget Reconciliation Act of 1981 (OBRA), Pub.L. No. 97–35, 95 Stat. 357. 42 U.S.C. §§ 9901–9912(a). The Community Services Block Grant Program provides grants to states for social services, 42 U.S.C. § 9901, and is one of numerous block grant programs established by OBRA to replace federal programs repealed by OBRA, *see South Eastern Human Development Corp. v. Schweiker,* 687 F.2d 1150, 1151 (8th Cir. 1982); OBRA §§ 116, 301, 551–596, 901, 1741(b)(1), 2192, 2352; 46 Fed.Reg. 48,582 (1981) (summary of block grant programs to be administered by the Secretary of Health and Human Services).

Acting under OBRA, the Secretary of Health and Human Services (the Secretary) made a community services block grant to South Dakota for fiscal year 1982. However, the State chose not to provide funding to plaintiff.

Plaintiff brought an action alleging that the Secretary's community services block grant to South Dakota was improper because the State had failed to meet certain of OBRA's requirements for a community services block grant. This court determined that South Dakota had failed to qualify for community services block grant funds for the first two quarters of fiscal year 1982. *Schweiker,* 687 F.2d 1150.

At this point § 1743(b) of OBRA, a transition provision, became applicable. Under § 1743(b), if a state fails to qualify for community services block grant funds for fiscal year 1982, the money that would have been given to the state as a block grant is distributed within the state pursuant to the otherwise repealed provisions of the EOA.

Having found that South Dakota failed to qualify for community services block grant funds, this court remanded the case with directions that the district court order the Secretary to proceed under OBRA § 1743(b). *Schweiker,* 687 F.2d at 1157.

[*] The Honorable William C. Hanson, United States Senior District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

The district court so ordered in an amended judgment. Pursuant to the district court's order, the Secretary awarded a grant to plaintiff of $57,842.

At this point a new hitch developed. Title II of the EOA provided that a grant by the Secretary was subject to veto by the governor of the recipient's state. 42 U.S.C. § 2834 (1976) (repealed). Claiming authority under this provision of the EOA by way of OBRA § 1743(b), the Governor of South Dakota vetoed the grant to plaintiff. Under the EOA veto provision, the Governor's veto could be overridden by the Secretary. However, the Secretary sustained the Governor's veto.

Plaintiff moved the district court for a writ of sequestration and an order of contempt against defendants. Plaintiff apparently conceded that the Governor had the power to veto the Secretary's grant but challenged the Governor's veto and the Secretary's sustainment of it on both substantive and procedural grounds.

Raising the issue on its own, the district court held that the Governor had no power to veto the Secretary's grant because the Governor's EOA veto was inapplicable under OBRA § 1743(b). While declining to enter an order of sequestration or contempt, the court ordered the Secretary to issue a letter of credit for $57,842 to plaintiff.

## II. DISCUSSION

The proceedings now subject to review were initiated by plaintiff's motion for a writ of sequestration and an order of contempt under Federal Rule of Civil Procedure 70. We question whether the issues raised could properly be addressed under Rule 70. Rule 70 provides for certain remedies, including sequestration and contempt, when a party violates a direction and a judgment to perform a "specific act." Fed.R.Civ.P. 70. With respect to the issues

raised, we question whether the amended judgment[1] is sufficiently specific to support a proceeding under Rule 70. However, the district court and the parties have treated plaintiff's Rule 70 motion as a motion for a writ in the nature of mandamus to review the Secretary's action under OBRA § 1743(b). Therefore, we will also treat it as such.

The district court held that the Governor's EOA veto was inapplicable under OBRA § 1743(b). We disagree.

This court's opinion in the prior appeal should not be read as deciding whether the Governor's EOA veto applies under OBRA § 1743(b) because the issue was not then before the Court. The issue in the prior appeal was whether the State had failed to qualify for community services block grant funds so as to make § 1743(b) of OBRA applicable. *See Schweiker*, 687 F.2d at 1151. The issue of the Governor's EOA veto under § 1743(b) had not even arisen at the time of the prior appeal.

To determine whether the Governor's EOA veto applies under OBRA § 1743(b), we must look to the intent of Congress in enacting § 1743(b). The House Conference Report on OBRA states as follows with respect to § 1743(b):

> The conferees intend that until a State has submitted its certification [i.e., qualified for a block grant], the appropriate Federal agencies shall use that portion of block grant funds not yet claimed by the State to continue those categorical programs operating in the State in FY 1981 for which the State has not yet assumed responsibility. This is to be done in such a manner that, when FY 1981 and FY 1982 funding is compared, each such program not assumed by the State shall receive the same percentage reduction or increase in its funding. The Federal agency shall use the same method of distributing funds as was used in FY

---

1. The amended judgment ordered
   [t]hat the Secretary of Health and Human Services shall carry out his duty under Title XVII, Section 1743(b) of the Omnibus Budget Reconciliation Act of 1981, to distribute to the

affected agencies the funds they would have received for the first two quarters of fiscal year 1982 pursuant to the repealed provisions of the Economic Opportunity Act of 1964.

1981 and the program shall be administered in a manner as similar as practicable to the way in which the original categorical programs were administered. H.Conf.Rep. No. 208, 97th Cong. 1st Sess., 923 (1981), *reprinted in* 1981 U.S.Code Cong. & Ad.News, 1010, 1285.

The meaning of this paragraph is somewhat obscured by two possible meanings of the word "program." On the one hand, "program" can be used to refer to an individual, local program such as that run by plaintiff. The EOA used "program" in this sense when it referred to "a community action program." *See* 42 U.S.C. § 2790 (1976) (repealed). On the other hand, "program" can be used to refer to a general, federal program made up of many local programs. In administering the EOA, the Community Services Administration used "program" to refer to federal programs such as the Summer Youth Recreation Program and the Emergency Energy Conservation Program. *See, e.g.,* 45 C.F.R. §§ 1061.20, 1061.30 (1982).

■ To understand the intent of § 1743(b) we must know whether the Conference Report is referring to local programs or federal programs when it provides that all programs operated in 1981 should be continued with pro rata changes in funding. The Report's use of the phrase "categorical programs" makes clear that it is referring to general, federal programs, just as this court used the phrase "categorical grant programs" to refer to federal programs in the prior appeal. *Schweiker,* 687 F.2d at 1151. Thus the Report shows a Congressional intent that under § 1743(b) all federal programs operated in 1981 should be continued with pro rata funding changes. This does not mean that all local programs must be continued with pro rata funding changes. Because each federal program is made up of many local programs, one local program could be dropped while continuing all federal programs with pro rata funding changes. This seems to us the most reasonable reading of § 1743(b). It would be impracticable to require continuation of all local programs,

some of which may have run their course or proved ineffective.

Within any one federal program, the intent shown by Conference Report is that "[t]he Federal agency shall use the same method for distributing funds as was used in FY 1981 and the program shall be administered in a manner as similar as practicable to the way in which the original categorical programs were administered." Since the Governor's EOA veto was part of the way funds were distributed and programs administered in 1981, the intent of OBRA § 1743(b) requires that the EOA veto apply, unless it is impracticable. Nothing suggests to us that it is impracticable to apply the Governor's EOA veto under OBRA § 1743(b). Indeed, applying the EOA veto furthers the general purpose of OBRA's block grants to increase state involvement in administering federal funds for social services. *See generally, Schweiker,* 687 F.2d at 1151 (purpose of block grants); S.Rep. No. 139, 97th Cong., 1st Sess. 908–09 (1981), *reprinted in* 1981 U.S.Code Cong. & Ad.News, 396, 932–33 (purpose of block grants).

In support of its motion for a writ of sequestration and an order of contempt, plaintiff attacked the Governor's veto and the Secretary's sustainment of it on substantive and procedural grounds. The district court did not reach these issues, since it held that the Governor's EOA veto was inapplicable under OBRA § 1743(b). These issues must be addressed by the district court on remand. However, we will address one comment by the district court regarding these issues.

It appears that at least part of the reason the Secretary sustained the Governor's veto was that plaintiff had not been funded since fiscal year 1981 and would not be funded in the future by the state under its community services block grants. The district court stated that the Secretary's rationale for sustaining the Governor's veto was "at best irrelevant and at worst suspect" because it was based on events occurring after the first two quarters of fiscal year 1982 and on conditions resulting from

the failure of the Governor and the Secretary to comply with OBRA prior to the previous appeal. Thus the district court would limit the considerations in allocating South Dakota's funds under OBRA § 1743(b) to the facts and circumstances existing before § 1743(b) became applicable. We do not agree that the considerations under § 1743(b) should be so limited.

 Neither this court's prior opinion nor the district court's amended judgment should be read to limit the considerations under OBRA § 1743(b) because the issue of what may be considered under § 1743(b) did not arise until after the amended judgment was entered. The district court's amended judgment, following the language of this court's opinion, ordered the Secretary to "carry out his duty under ... Section 1743(b) ..., to distribute to the affected agencies the funds they would have received for the first two quarters of fiscal year 1982 pursuant to the repealed provisions of the [EOA]." The language referred to the funds the affected agencies "would have received for the first two quarters of fiscal year 1982" could be read to limit the considerations under § 1743(b) to facts and circumstances existing before the first two quarters of fiscal year 1982. However, the gist of this court's opinion and the district court's amended judgment is that the Secretary must "carry out his duty under ... Section 1743(b)." The subsequent language is merely this court's generalized description of what § 1743(b) requires, which should not be read to decide an issue not then before the court.

We do not believe Congress intended to limit the considerations in allocating funds under OBRA § 1743(b) to facts and circumstances existing before § 1743(b) became applicable. Neither OBRA nor the EOA guarantees funding to plaintiff if certain conditions are met at a particular point in time. Section 1743(b) is not a remedy to vindicate a right in plaintiff to funding but a transitional administrative provision. As an administrative provision, § 1743(b) should be interpreted to further the purposes of the programs it administers. The purpose of the Community Services Block Grant Program is the amelioration of poverty. 42 U.S.C. § 9901(a). The purpose of ameliorating poverty requires that decisions on the allocation of funds be based on all existing facts and circumstances relevant to the delivery of the social services. Therefore, we hold that the Governor's and the Secretary's decisions on the veto could properly be based on events occurring after the first two quarters of fiscal year 1982 or on conditions resulting from the failure of the Governor and the Secretary to comply with OBRA prior to the previous appeal.

### III. CONCLUSION

We vacate the district court's order of April 21, 1983 that the Secretary issue a letter of credit to plaintiff. The case is remanded to the district court for further proceedings consistent with this opinion.