## RURAL ALASKA COMMUNITY ACTION PROGRAM, Plaintiff–Appellant,

### v.

**Jeff SMITH, as Acting Commissioner, Department of Community and Regional Affairs, State of Alaska; Otis R. Bowen, Secretary, U.S. Department of Health and Human Services, Defendants–Appellees.**

### No. 87–3887.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 4, 1988.

Decided May 23, 1988.

Eric Smith, Anchorage, Alaska, for plaintiff-appellant.

Marjorie L. Odland, Asst. Atty. Gen., Juneau, Alaska, Kathryn Warma, Sp. Asst. U.S. Atty., Seattle, Wash., for defendants-appellees.

James L. Feldesman, Klores, Feldesman and Tucker, Washington, D.C., for the amicus curiae National Community Action Foundation.

Before BROWNING, Chief Judge, NORRIS and O'SCANNLAIN, Circuit Judges.

NORRIS, Circuit Judge:

Rural Alaska Community Action Program ("Rural Alaska") appeals a summary judgment in favor of state and federal officials and agencies responsible for Alaska's Community Services Block Grant (CSBG) program. Rural Alaska seeks a declaration that a 1986 amendment to Alaska's CSBG program plan is void because the state failed to follow certain procedures in amending the plan. We affirm the summary judgment because the procedural requirements that Rural Alaska seeks to impose on Alaska's CSBG program are not statutorily required.

### I

The CSBG program was created by Congress in 1981 to provide federal funds to

states to use "to ameliorate the causes of poverty in communities within the State[s]." 42 U.S.C. § 9901(a). The block grant system, which permits the states to administer the programs with minimal federal involvement and few federal procedural requirements, replaced a large number of categorical social services grants programs previously administered directly by the federal government. *See generally South Eastern Human Development Corp. v. Schweiker*, 687 F.2d 1150, 1151 (8th Cir.1982); S.Rep. No. 139, 97th Cong., 1st Sess. 908, *reprinted in* 1981 U.S.Code Cong. & Admin.News 396, 932. To receive federal funds under the program, a state must annually submit to the Office of Community Services (OCS) of the United States Department of Health and Human Services (DHHS) an application certifying that the state will distribute the funds only for the purposes permitted by the statute and only to community services organizations deemed eligible under the statute. 42 U.S.C. § 9904. The state must also submit to DHHS a plan for the proposed use of the CSBG funds. 42 U.S.C. § 9904(d). When the state receives the funds, it distributes them to community action agencies that provide services to the poor.

There are two community action agencies in Alaska that are eligible to receive CSBG funds: Rural Alaska and Southeast Alaska Community Action Program (SEACAP). Prior to 1986, Alaska's CSBG plans allocated 90 percent of available funds to Rural Alaska and ten percent to SEACAP. The 90 percent/10 percent formula for dividing the funds was based on the proportion of the state's poor people living in the area served by each agency. Because SEACAP found it difficult to operate receiving only ten percent of the available funds, DCRA proposed in the 1986 CSBG plan to modify the formula to give each agency a base amount of $50,000 and to divide the remaining available funds according to the 90

percent/10 percent formula. Thus, the plan proposed to divide the $1,051,504 in CSBG funds that Alaska was estimated to receive in 1986 as follows: $250,180 would be allocated directly to native organizations,[1] $80,132 would be retained by the state to cover administrative expenses, and the remaining $721,192 would be divided between Rural Alaska and SEACAP by allocating $50,000 to each and then giving Rural Alaska 90 percent of the remaining $621,192 ($560,998) and SEACAP 10 percent ($60,194). In April 1986, after a legislative hearing, the plan was adopted, signed by the state governor, and sent to DHHS, as required by 42 U.S.C. § 9904(d).

In July 1986, DHHS notified Alaska's Department of Community and Regional Affairs (DCRA), the state agency responsible for administering Alaska's CSBG program, that approximately $78,000 of the $250,180 that the 1986 plan had originally allocated to a native organization had been returned unspent to DHHS and was being reallocated to the state of Alaska. DCRA decided to distribute $55,000 of these funds to SEACAP to provide seed money for a new project, and $15,000 to Rural Alaska. Because this allocation differed from the allocation formula provided in the 1986 plan, DCRA proposed to amend the plan in accordance with the amendment procedure outlined in the plan. That procedure provides that "[d]uring the program year, in consultation with local grantees, this plan may be amended, as appropriate. OCS will be notified of State Plan amendments." After soliciting comments from SEACAP and Rural Alaska on the proposed amendment, DCRA submitted the plan amendment to OCS.

Rural Alaska promptly filed a complaint with OCS pursuant to 45 C.F.R. § 96.50 claiming that the plan amendment was invalid because it was adopted without the state having conducted a legislative hearing on it.[2] In rejecting the complaint, OCS

---

1. DHHS, upon request from a native organization, may allocate directly to the native organization a prescribed amount that would otherwise be alloted to the state in which the organization is located. 42 U.S.C. § 9903(c).

2. 45 C.F.R. § 96.50 (1987) provides, in pertinent part:

(a) This section applies to any complaint ... that a State has failed to use its allotment under a block grant in accordance with the terms of the act establishing the block grant

decided that the federal statute governing the CSBG program permits a state to amend its plan without conducting a legislative hearing.

Thus rebuffed, Rural Alaska filed this suit in district court seeking declaratory and injunctive relief prohibiting the state from distributing the additional funds without first conducting a legislative hearing on the plan amendment.

## II

We first address a dispute between the parties concerning the proper standard of review. The parties agree that the district court's legal conclusions are reviewed de novo on appeal from a grant of summary judgment. *Ashton v. Cory*, 780 F.2d 816, 818 (9th Cir.1986). The dispute concerns whether we must defer to DCRA's interpretation of the statutory provisions governing the CSBG program.

Appellees contend that Alaska's interpretation of the statute must be upheld unless it is clearly erroneous. They rely on the federal regulation providing for OCS review of state agency decisions concerning block grants, which provides that "under the block grant programs the States are primarily responsible for interpreting the governing statutory provisions.... In resolving any issue raised by a complaint ... the Department will defer to a State's interpretation of ... the provisions of the block grant statutes unless the interpretation is clearly erroneous." 45 C.F.R. § 96.50(e) (1987). By its own terms, the regulation applies to OCS review of administrative complaints, not to federal court

proceedings such as this. OCS review of administrative complaints typically involves an evaluation of the facts and state policies underlying the plan. A deferential standard of review appropriately protects the states' autonomy under the block grant system and serves the express Congressional goal of minimizing federal administrative oversight of both substantive and procedural aspects of state block grant programs. *See* S.Rep. No. 139, 97th Cong., 1st Sess. 909, *reprinted in* 1981 U.S.Code Cong. & Admin.News 933 ("the committee intends that States be provided with the broadest possible latitude in the use of block grant funds and be free from all but the most minimal and necessary federal administrative and regulatory direction"). Such deference is inappropriate where, as here, a broader procedural question is presented and where an interpretation of the statute should be uniform among all states. The minimum statutory procedural requirements for validly amending CSBG program plans do not vary from one state to another: Congress either intended to require public hearings on plan amendments or it did not. This question of statutory interpretation is a legal question that we review de novo. *See United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

## III

■ We now turn to Rural Alaska's contention that the plan amendment is void because the state failed to hold a legislative hearing before adopting it.

---

or the certifications and assurances made by the State pursuant to that act....

(b) ... Complaints with respect to the community services block grant must be submitted in writing to the Director, Office of Community Services.... The complaint must identify the provision of the act, assurance, or certification that was allegedly violated; must specify the basis for the violations it charges; and must include all relevant information known to the person submitting it.

(c) The Department shall promptly furnish a copy of any complaint to the affected State.... The Department will conduct an investigation of complaints where appropriate.

\* \* \* \* \* \*

(e) The Department recognizes that under the block grant programs the States are primarily responsible for interpreting the governing statutory provisions. As a result, various States may reach different interpretations of the same statutory provisions. This circumstance is consistent with the intent of and statutory authority for the block grant programs. In resolving any issue raised by a complaint or a Federal audit the Department will defer to a State's interpretation of its assurances and of the provisions of the block grant statutes unless the interpretation is clearly erroneous....

The statute contemplates that states will create CSBG plans on an annual basis. 42 U.S.C. § 9904.[3] Legislative hearings are required "on the proposed use and distribution of funds to be provided under [the CSBG program] *for [each] fiscal year.*" 42 U.S.C. § 9904(b) (emphasis added). Because the statute envisions that plans will be formulated annually, the legislative hearing requirement appears to apply only to annual plans for the proposed use of funds. *Id.* That the statute refers to the "proposed" use of funds suggests that the states may modify their annual plans during the course of the year. Indeed, the statute expressly authorizes a state to revise or amend its plan. 42 U.S.C. § 9904(d)(1). The provision authorizing such revisions does not, however, mention that a legislative hearing is required every time a state decides to distribute the funds in a way different from the one originally proposed.

None of the legislative history specifically addresses whether a public hearing is required before a state may amend its CSBG plan. Rural Alaska emphasizes the portions of the legislative history reflecting Congress's intent that there be full public participation in designing CSBG plans. *See* S.Rep. No. 139, 97th Cong., 1st Sess. 908–09, *reprinted in* 1981 U.S.Code Cong. & Admin.News 932–33 ("The committee has intended to underscore at every appropriate instance its expectation that block grant funds should be allocated in an open and democratic way. For example, ... the State legislature must conduct public hearings on the allocation of block grant funds."). Rural Alaska argues that this intent would be thwarted if the state could, after soliciting public participation on one proposed plan, simply scrap the entire plan and substitute a completely different one with no public hearing at all. That, however, is not what happened here. The amendment did not cover the funds initially allocated to Rural Alaska and SEACAP under the original plan; it affected only the additional funds that under the original plan had been allocated directly to a native organization. Moreover, there was public involvement in amending the plan because the state sought and received comment on the proposed amendment from both community action agencies involved. We also note that the amendment was adopted pursuant to the original plan's amendment procedures, which had been subject to a public hearing.

Congress intended to accord states great flexibility in administering CSBG programs and expressly noted that "the Governor may alter his State's plan at any time...." S.Rep. No. 139, 97th Cong., 1st Sess. 908, *reprinted in* 1981 U.S.Code Cong. & Admin.News 932. That Congress envisioned that a state could revise its plan at any time, and yet did not explicitly require a public hearing before doing so, strongly suggests that it did not intend to require a public hearing. We are particularly reluc-

---

**3.** 42 U.S.C. § 9904 provides, in relevant part:

(a) Form and assurances

Each State desiring to receive an allotment for a fiscal year under this chapter shall submit an application to the Secretary.... Each such application shall contain assurances by the chief executive officer of the State that the State will comply with subsection (b) of this section and will meet the conditions enumerated in subsection (c) of this section.

(b) Public hearings on use and distribution of funds for subsequent fundings

... [N]o funds shall be allotted to such State for any fiscal year under this chapter unless the legislature of the State conducts public hearings on the proposed use and distribution of funds to be provided under this chapter for such fiscal year.

(c) Certifications required

As part of the annual application required by subsection (a) of this section, the chief executive officer of each State shall certify that the State agrees to—

[use the funds only for several enumerated purposes and distribute them only to qualified community service organizations]

(d) State plans

(1) ... [T]he chief executive officer of each State shall prepare and furnish to the Secretary a plan which contains provisions describing how the State will carry out the assurances contain in subsection (c) of this section. The chief executive officer of each State may revise any plan prepared under this paragraph and shall furnish the revised plan to the Secretary.

(2) Each plan prepared under paragraph (1) shall be made available for public inspection within the State in such a manner as will facilitate review of, and comment on, the plan.

tant to impose additional procedural requirements to those expressly mentioned in the statute, in light of Congress' intent that the statute is

> meant to be definitive with regard to paperwork, reports, and accountability. The Secretary is specifically directed not to interpret these requirements by regulation or otherwise go beyond the explicit boundaries of the limited federal role clearly defined in the bill.

*Id.*

We note that our interpretation of the statute is consistent with that held by OCS, the agency charged with responsibility for federal involvement in the CSBG program. OCS, in rejecting Rural Alaska's administrative complaint, determined that a legislative hearing was not required, in part because the disputed additional funds had been included in the proposed state plan that had previously been subject to the public hearing requirement, and in part because the CSBG statute contemplates giving states flexibility in distributing funds. We respect the interpretation of the statute held by the agency responsible for administering it. *See Kunaknana v. Clark,* 742 F.2d 1145, 1150 (9th Cir.1984).

In sum, in the particular circumstances of this case, the lack of a public hearing is not grounds for declaring Alaska's plan amendment void.

### IV

■ Rural Alaska also contends that the plan amendment is void because it was not signed by the governor. In support of this contention, Rural Alaska cites 42 U.S.C. § 9904(d)(1), which states that "the chief executive officer of each State shall prepare and furnish to the Secretary a plan" and authorizes the "chief executive officer of each State" to "revise any plan prepared under this paragraph...." This language, however, does not expressly require that the governor *sign* the plan. It requires that the governor be responsible for the plan and for amending it. Rural Alaska has not asserted that the governor's responsibility in this regard was usurped. It is undisputed that the new governor has

implemented the amendment by distributing the additional funds under the revised formula. The purpose of the governor's personal certification requirement—to ensure that the plan reflects state policy as a whole rather than the views of only one state agency—thus appears to be satisfied.

The legislative history suggests that the only document that Congress expressly intended the governor to sign is the annual application for funds pursuant to section 9904(a). *See* S.Rep. No. 139, 97th Cong., 1st Sess. 908, *reprinted in* 1981 U.S.Code Cong. & Admin.News 932 ("The governors should be required only to sign and date the application and return it to the Secretary.") In light of Congress' express direction that the paperwork and reporting requirements listed in the statute be considered exhaustive, we believe that the omission of an express requirement that the governor sign a plan amendment is significant.

The judgment of the district court is AFFIRMED.

