REQUESTED BY: Carson H. Rogers, State Senator
Can the Nebraska Unicameral pass legislation and specify in statute a formula by which the Department of Social Services shall allocate Community Service Block Grant funds to the nine Community Action Agencies in Nebraska?
Yes, on the condition that the legislation is in compliance with federal guidelines.
The Supreme Court has long recognized that Congress may fix the terms on which it will dispense federal money to the states. Oklahoma v. CSC, 330 U.S. 127 (1947); King v. Smith, 392 U.S. 309 (1968); Rosado v. Wyman, 397 U.S. 397
(1970). Legislation enacted pursuant to the spending power of Congress is much in the nature of a contract; in return for federal funds, the states agree to comply with federally imposed conditions. "The legitimacy of Congress' power to legislate under the spending power thus rests on whether the state voluntarily and knowingly accepts the terms of the contract. Accordingly, if Congress intends to impose a condition on the grant of federal monies, it must do so unambiguously." Pennhurst State School v. Haldeman, 451 U.S. 17
(1980). Thus it is a legitimate Congressional prerogative to provide for conditionally funded grants as long as the guidelines states must adhere to in order to qualify for those grants are unambiguously delineated.
The Community Services Block Grant program was created by Congress in 1981 to provide federal funds to states to administer as long as that administration took place within the general and well specified guidelines as set forth by Congress in Subtitle B, the Community Services Block Grant Program. The Block Grant program has thus been established through a legitimate use of Congress' spending power.
Section 675 of the Community Service Block Grant Program governs the requirements each state must meet in order to receive federal funding. As related to the question presented, Section 675 sets out the following guidelines:
 (a) Each state desiring to receive an allotment for a fiscal year under this subtitle shall submit an application to the Secretary. . . . Each such application shall contain assurances by the chief executive officer of the state that the state will comply with subsection (b) and will meet the conditions enumerated in subsection (c).
 (b) . . . no funds shall be allotted to such state for any fiscal year under this subtitle, unless the legislature of the state conducts public hearings on the proposed use and distribution of funds to be provided under this subtitle for each fiscal year. Part C of Section 675 contains a list of guidelines Congress set forth establishing the criteria each state's program must meet.
The pertinent portion of this section as concerns the question presented establishes that the governor of each state receiving funds must certify that the state's program meets the Section 675(c) guidelines. Indeed, the courts that have interpreted the provisions of Section 675 focus on the need for the governors to certify that any changes in the state's program are in compliance with Congressional guidelines.
For instance, Rural Alaska Community Action Program v. Smith, 847 F.2d 535 (9th Cir. 1988) involved a case where a state agency brought a suit challenging an amendment to a plan for proposed use of federal Community Services Block Grant funds. The court held that as long as the governor of the state certified that the state administered the Block Grant program in compliance with Congressional standards, no additional procedural requirements had to be met.
As confirmed by Section 675 and case law, the essential procedural requirement of states that apply for Block Grant funds is that the governor must certify that the state's program conforms with the program's guidelines as mandated by Congress.
Section 675 also requires public hearings be held concerning any proposals that would change the state's Community Block Services program. South Eastern Human Development Corporation v. Schweiker, 687 F.2d (8th Cir. 1982) concerned a state's attempt to change guidelines formerly utilized to administer the Community Block Grant program. The court interpreted Section 675(b) as requiring the Legislature to hold public hearings if it chooses to utilize new guidelines when administering the federal funds in question. Id. at 1156.
Therefore, as interpreted by the courts, Congress has apparently allowed for the involvement of state legislatures in the administration of Community block Grant funds as long as that involvement is in compliance with federal guidelines. The two essential components of those guidelines are that:
 (1) The Unicameral must have the Governor certify that the changes implemented by the legislative body do not violate the Congressional guidelines for the administration of the program as contained in Section 675(c).
 (2) The Unicameral is required by Section 675(b), to hold public hearings on the "proposed use and distribution of funds." Some courts such as the court in Schweiker, supra, have recognized that the State's executive branch may also conduct the requisite public hearings.
In conclusion, the Community Services Block Grant Act and the majority of courts seem to recognize that if the requirements listed in (1) and (2) above are met, the Unicameral can pass legislation affecting the Community Services Block Grant program.
Sincerely,
DON STENBERG Attorney General
Royce N. Harper Senior Assistant Attorney General