**Dr. Bhartur N. PREMACHANDRA, Appellee,**

v.

**Dr. Murray G. MITTS, et al., Appellants.**

**No. 82–2441.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1984.

Decided Jan. 14, 1985.

Motion for Clarification and Reconsideration Denied April 12, 1985.

Nicholas Zeppos, Justice Dept., Washington, D.C., Thomas E. Dittmeier, U.S. Atty., Joseph B. Moore, Asst. U.S. Atty., St. Louis, Mo., and William Kanter and Anne Buxton Sobol, Justice Dept., Washington, D.C., for appellant.

Marilyn S. Teitelbaum, St. Louis, Mo., for appellee.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BRIGHT, ROSS, McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG and BOWMAN, Circuit Judges, en banc.

JOHN R. GIBSON, Circuit Judge.

The question before us is whether the United States is liable under the Equal Access to Justice Act, 28 U.S.C. § 2412(b) (1982), for attorneys' fees incurred by Dr. Bhartur Premachandra in his suit against the Veterans Administration based on an alleged constitutional violation. As we find no basis in the language of the statutes or legislative history to support an award, we reverse the judgment of the district court granting Premachandra fees.

Premachandra is a research endocrinologist with the VA. On December 30, 1980, the VA told him that he would be terminated on January 16, 1981 and that his laboratory must be dismantled by then. Premachandra appealed his termination to the Merit Systems Protection Board. He also filed a suit in federal court, seeking to enjoin the termination and the dismantling of the laboratory pending a hearing before the MSPB. Premachandra alleged that the fifth amendment guaranteed him the right to a pretermination hearing.

The district court denied the preliminary injunction. *Premachandra v. Mitts,* 509 F.Supp. 424 (E.D.Mo.1981). On appeal, this court stayed the dismantling of the laboratory pending oral argument, when the parties agreed that the laboratory would be left intact until the MSPB ruled. Premachandra prevailed in the MSPB appeal; the VA was ordered to reverse the termination and pay Premachandra's attorneys' fees in the administrative proceedings. We dismissed the injunction appeal as moot. *Premachandra v. Mitts,* No. 81–1246 (8th Cir. Oct. 27, 1981) (judgment).

On February 26, 1982, Premachandra asked the district court for an attorneys' fee award in the injunction litigation. The court found that Premachandra was a "prevailing party," and entitled to fees under 42 U.S.C. § 1988 (1982) and section 2412(b). *Premachandra v. Mitts,* 548 F.Supp. 117 (E.D.Mo.1982). The court decided that section 2412(b) supported an award "because § 1988 explicitly allows the award of fees to 'prevailing parties' in civil rights actions." *Id.* at 121. The award was affirmed by a divided panel of this court. *Premachandra v. Mitts,* 727 F.2d 717 (8th Cir.1984). The panel majority commented: "Candor compels us to admit that both parties' interpretations and supporting arguments are persuasive. The problem we face is deciding which one of the two interpretations is more consistent with Congress' intent." *Id.* at 725. The panel essentially held that section 2412(b) authorizes fee awards in cases that are analogous to actions brought under 42 U.S.C. § 1983 (1982). This is tantamount to holding that section 1988 applies in suits against the United States or its officials based on rights analogous to those protected by the laws specifically listed in section 1988. *See Lauritzen v. Lehman,* 736 F.2d 550, 553 (9th Cir.1984).

We granted rehearing en banc. Premachandra supports the decisions of the district court and the panel with the following reasoning: Section 1988 allows fees for suits brought under section 1983, which covers violations of the Constitution and federal laws by persons acting under color of state law. The defendants' conduct would have been actionable under section 1983 had they acted under color of state law. Thus, section 2412(b) should be interpreted to make the United States liable for fees when it loses a lawsuit based on conduct that would support an award against a party acting under color of state law. Premachandra maintains that this interpretation is consistent with the statute's reme-

dial purpose and legislative history. A few courts have adopted this reasoning. *See Boudin v. Thomas,* 732 F.2d 1107, 1114 (2d Cir.1984) (dictum); *Trujillo v. Heckler,* 587 F.Supp. 928, 931–32 (D.Colo.1984); *Clemente v. United States,* 568 F.Supp. 1150, 1171 (C.D.Cal.1983).

The VA argues that section 2412(b) is a limited waiver of sovereign immunity and must be strictly construed. It contends that section 2412(b) authorizes fees only "to the same extent that" another fee-shifting statute—in this case section 1988—would make "any other party" liable for fees. Section 1988 would not authorize a fee against "any other party" because there has been no violation of any statute encompassed by section 1988. Because no "other party would be liable" for fees under section 1988, the VA argues that the United States is non-liable "to the same extent." This is the majority view. *See Holbrook v. Pitt,* 748 F.2d 1168, at 1176–77 (7th Cir.1984); *Lauritzen,* 736 F.2d 553–59; *Saxner v. Benson,* 727 F.2d 669, 673 (7th Cir.1984); *Northwest Indian Cemetery Protective Association,* 589 F.Supp. 921, 924–26 (N.D.Cal.1983); *Unification Church v. Immigration & Naturalization Service,* 574 F.Supp. 93, 95–96 (D.D.C. 1983); *Venus v. Goodman,* 556 F.Supp. 514, 521–22 (W.D.Wis.1983); *United States v. Miscellaneous Pornographic Magazines,* 541 F.Supp. 122, 127–29 (N.D.Ill. 1982).

### I.

To decide this issue, we must look primarily to the statute itself, for we believe that the ordinary meaning of its language expresses the legislative purpose. *See Immigration & Naturalization Service v. Phinpathya,* 464 U.S. 183, 104 S.Ct. 584, 589, 78 L.Ed.2d 401 (1984). Section 2412(b) provides:

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency and any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

Premachandra's claim to fees under the common law was not reached by the district court. Accordingly, we must first examine whether "the terms of any statute * * * specifically" provide for attorneys' fees. The only statute arguably applicable is section 1988, which provides:

> In any action or proceeding to enforce a provision of Section 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Premachandra's underlying lawsuit was brought against federal officials acting in their individual and official capacities. The action was brought to vindicate his alleged fifth amendment due process rights.[1] Section 1983 is the only statute named in section 1988 that provides a remedy for violations of the Constitution. Because Premachandra did not allege that the defendants acted under color of state law, no section 1983 liability could be found. *See Ellis v. Blum,* 643 F.2d 68, 83 n. 17 (2d Cir.1981). Thus, the action was not brought to "enforce a provision" enumerated in section 1988. Consequently, there is no statute that specifically provides for attorneys' fees in this case, and section 2412(b) does not apply. Sections 1988 and 2412(b) have recently been analyzed under similar cir-

---

1. The complaint stated claims based directly on the fifth amendment, a provision of the Civil Service Reform Act of 1978, 5 U.S.C. 4303 (1982), and VA regulations implementing the 1978 Act.

cumstances in *Lauritzen,* 736 F.2d at 553–54, and the same conclusion was reached.

## II.

Even if it is accepted that section 2412(b) is facially vague or ambiguous, the next step is not to delve into the "ashcans of the legislative process." C. Curtis, *It's Your Law* 52 (1954). Rather, resort should be had to a more formal expression of congressional intent—the context in which section 2412(b) appears. *See Richards v. United States,* 369 U.S. 1, 11, 82 S.Ct. 585, 591–92, 7 L.Ed.2d 492 (1962); *Sierra Club v. Clark,* No. 84–5042, slip op. at 7 (8th Cir. Jan. ——, 1984); C. Sands, *Statutes and Statutory Construction* § 27.02, at 310 (4th ed. 1972). 28 U.S.C. § 2412(d)(1)(A) (1982) provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

Adopting Premachandra's interpretation of section 2412(b) could render nugatory the "substantially justified" and "special circumstances" limits in section 2412(d). Many of the civil actions for which fees may be sought under subsection (d) are based on violations of federal law or the Constitution. These actions could support suits under section 1983 but for the fact that they involve officials acting under color of federal rather than state law. If subsection (b) allowed fee awards in cases analogous to section 1983 actions, persons prevailing against the United States in a wide variety of civil suits could receive attorneys' fees in cases where the government's position was substantially justified.[2] Consequently, the restrictions in subsection (d) would be circumvented, and congressional intent thwarted. This result should be avoided. *See South Eastern Human Development Corp. v. Schweiker,* 687 F.2d 1150, 1155 (8th Cir.1982).

Premachandra's response is that the current limitations on section 1983 actions will prevent most parties who sue the government from invoking the "analogous" link to section 1988. It is true now that not every violation of a federal statute will support a section 1983 action. *See, e.g., Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 20–21, 101 S.Ct. 2615, 2626–27, 69 L.Ed.2d 435 (1981); *Pennhurst State School v. Halderman,* 451 U.S. 1, 15, 101 S.Ct. 1531, 1538–39, 67 L.Ed.2d 694 (1981); *First National Bank v. Marquette National Bank,* 636 F.2d 195, 198 (8th Cir. 1980), *cert. denied,* 450 U.S. 1042, 101 S.Ct. 1761, 68 L.Ed.2d 240 (1981). Our task is not, however, to discern past congressional intent on the basis of current judicial developments. Rather, the focus must be on the law when section 2412 was enacted. In 1980, when this section was passed, section 1983 meant what it says: causes of action could be based on violations of federal law by officials acting under color of state law. In June 1980, the Supreme Court observed that the phrase "and laws" in section 1983 was not encumbered by any modifiers. The Court held that section 1983 was not confined to violations of civil rights or equal protection laws. *Maine v. Thiboutot,* 448 U.S. 1, 4–8, 100 S.Ct. 2502, 2504–06, 65 L.Ed.2d 555 (1980). Consequently, when section 2412 was passed, it was conceivable that all federal statutes could support section 1983 actions. *See id.* at 11, 100 S.Ct. at 2507–08 (Powell, J., dissenting) (interpreting majority opinion to provide an

---

**2.** Experience has demonstrated the limiting influence of the "substantially justified" language. During the 1983 fiscal year, 133 fee requests were filed under subsection (d). Over half of these petitions were denied on the grounds that the government's position was substantially justified. 1983 Annual Report Administrative Office United States Courts 82. If allowed to proceed under subsection (b), many of these disappointed litigants may have been awarded fees.

action for violation of "any federal statutory right"). If so, parties could readily bypass the "substantially justified" requirement and evade the other substantive limits in subsection (d) under Premachandra's theory.[3] A plain reading of the statute and its context does not support Premachandra's position.

### III.

Premachandra's chief argument, that accepted by the panel opinion, is that congressional intent mandates the interpretation of section 2412(b) in a manner that authorizes payment of attorneys' fees here. The Equal Access to Justice Act, 28 U.S.C. § 2412 (1982), originated as S. 265, 96th Cong., 1st Sess., 125 Cong.Rec. 1404 (1979). The bill originally provided that the United States shall be liable for attorneys' fees "in those circumstances where the courts may award such fees in suits involving private parties." It is the amendment of this language, particularly the substitution of the phrase "any other party" for "private parties" that gives rise to Premachandra's argument. He argues that this change was brought about by the testimony of a witness, Armand Derfner, in the legislative hearings. Derfner, of the Lawyer's Committee for Civil Rights Under Law, told a House subcommittee:

> There is an area in which a slight drafting modification could carry out what I believe might be the intention of the committee; and that is to put the United States completely on a par as far as the enforcement of important constitutional and statutory rights.

> In the Civil Rights Act of 1976 you provided that when someone, whether it be an individual or business, or whatever, sues a State or local government under 42 United States Code, section 1983, to vindicate a constitutional or Federal statutory right, that fees would be available under the *Newman v.* * * * *[Piggie] Park* standard. These bills say that the United States should pay fees—in the amendment to 28 United States Code 2412—in those circumstances where the court may award such fees in suits involving private parties.

> That doesn't say State or local government, but if the language were amended to read, "in those circumstances where the court may award such fees in suits involving other litigants"; it would achieve that purpose. And I think it would go even further toward putting the United States on a par with other governmental bodies.

*Award of Attorneys' Fees Against the Federal Government: Hearings on S. 265 Before the Subcomm. on Courts, Civil Liberties, and the Administration of Justice of the House Comm. on the Judiciary,* 96th Cong., 2d Sess. 100 (1980) [Hereafter *Hearings*].

Although the subcommittee did not adopt the language advocated by Mr. Derfner, it did change "a private party" to "any other party." This change was reflected in the bill as passed, but no explanation was ever offered for the amendment. Premachandra argues that this sequence reflects Congress's intent to make the federal government liable for attorneys' fees in suits to vindicate violations of the Constitution and federal law.

There is no need to resort to conjecture regarding the legislative history. The language and context of the statute obviate the need to evaluate Derfner's testimony. Nevertheless, we explore this issue to meet the panel's findings and the contention that

---

**3.** In *Lauritzen,* it was suggested that a prevailing party given a choice between (b) and (d) will not necessarily seek fees under the former. This conclusion presumes that "section 2412(b) grants only discretionary power to the court to award fees, unlike the mandatory assessment under section 2412(d)." 736 F.2d at 564 (Boochever, J., dissenting). Reading these two subsections in conjunction with section 1988 shows that subsection (b) offers the path of less resistance. If subsection (b) applies, the court must invoke section 1988, which means fees are awarded unless special circumstances would make the result unjust. *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). It is far easier to satisfy this standard than to show that the government's position was not substantially justified. *See* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4953, 4984, 4989.

the result we reach is inconsistent with congressional intent. *See TVA v. Hill*, 437 U.S. 153, 184, 98 S.Ct. 2279, 2296–97, 57 L.Ed.2d 117 (1978); *Ashley Drew & Northern Railway v. United Transportation Union*, 625 F.2d 1357, 1356 (8th Cir.1980).

Courts are reluctant to give dispositive weight to statements made in the process of enacting laws.[4] This is particularly true when the proferred meaning derives from the views of a single individual, espoused relatively early in the enacting process. *See Allen v. State Board of Elections*, 393 U.S. 544, 568–69, 89 S.Ct. 817, 833, 22 L.Ed.2d 1 (1969). Nevertheless, we recognize that the proximity of the amendment to Derfner's testimony provides a better reason for exploring the testimony than is typically found in statutory construction cases. We decline, however, to adopt the inferences that Premachandra urges.

First, there is no statement in any of the legislative history that links the amendment to the Derfner testimony. Premachandra contends that the absence of discussion concerning the amendment demonstrates unanimous congressional agreement with the Derfner testimony. There is convincing authority to the contrary. *See* R. Dickerson, *The Interpretation and Application of Statutes* 181–82 (1975) ("There could hardly be less reputable legislative material than legislative silence.") (footnote omitted); *see also American Smelting & Refining Co. v. OSHA*, 501 F.2d 504, 510 (8th Cir.1974) (congressional failure to respond to comments in a committee hearing does not necessarily reflect agreement). Notwithstanding the amendment, the Conference Committee observed:

Conference substitute provision reflects the belief that, at a minimum, the United States should be held to the same standards in litigating as *private* parties. As such, it is consistent with the history of § 2412 which reflects a strong movement by Congress toward placing the Federal government and civil litigants on a completely equal footing. (See generally, *Natural Resources Defense Council v. E.P.A.*, 484 F.2d 1331 (1st Cir.1973).

H.R.Rep. No. 1434, 96th Cong., 2d Sess. 25, *reprinted in* 1980 U.S.Code Cong. & Ad. News 5003, 5014 (emphasis added). This explanation does not reflect any intent to place the United States and state governments on parity. The *NRDC* case cited discusses only the relationship between the United States government and a "private litigant." 484 F.2d at 1335. The House Judiciary Committee report contains a similar discussion. H.R.Rep. No. 1418, 96th Cong., 2d Sess. 9, *reprinted in* 1980 U.S. Code Cong. & Ad.News 4984, 4987.[5]

Second, there is a disparity between the amendment Derfner offered and the language that Congress adopted. When introduced, the bill contained the phrase "in those circumstances in which the court may award fees in such suits involving private parties." *Hearings, supra*, at 230–31. Derfner proposed to change "private parties" to "other litigants." *Id.* at 100. As passed, the bill contained the phrase "to the same extent that any other party would be liable." The change to "other party" may be consistent with Derfner's suggestion. Elimination of the "circumstances" language, however, seems to cut against

---

4. *See, e.g., Chrysler Corp. v. Brown*, 441 U.S. 281, 311, 99 S.Ct. 1705, 1722, 60 L.Ed.2d 208 (1979) (comments of legislative sponsors were not binding); *McCaughn v. Hershey Chocolate Co.*, 283 U.S. 488, 493, 51 S.Ct. 510, 512, 75 L.Ed. 1183 (1931) (testimony of witnesses before Congress carried no weight).

5. In Judge Boochever's dissent in *Lauritzen*, it was observed that the "any other party" amendment must have been directed to section 1983, "because only section 1983 differentiates between states and 'private parties', because [of all the statutes mentioned in section 1988] only section 1983 requires parties to act under color

of state law before liability may attach." 736 F.2d at 562 (Boochever, J., dissenting). In certain cases, however, the remaining civil rights statutes listed in section 1988 may not be invoked absent state action. *See, e.g., Mahone v. Waddle*, 564 F.2d 1018, 1029–30 (3d Cir.1977) (construing section 1981 equal benefits and like punishment clauses to require state action). The concept of state action is sufficiently close to "color of law" to question the inference claimed by Judge Boochever. *See Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 928 n. 8, 102 S.Ct. 2744, 2749 n. 8, 73 L.Ed.2d 482 (1982).

Premachandra's theory regarding suits "analogous" to section 1983. *See Lauritzen*, 736 F.2d at 556; *Northwest Indian Cemetery Protective Association v. Peterson*, 589 F.Supp. 921, 926 (N.D.Cal.1983). The ambiguous origin of the amendment is insufficient to contradict the express language of the statute.[6]

Finally, the totality of the legislative history demonstrates a congressional reluctance to assign expansive liability for attorneys' fees to the government. This is seen in the "substantially justified" limitation in subsection (d), as well as in discussions of the scope of subsection (b). *See* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 8, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4984, 4986 (section 2412(b) applies only in "limited situations").[7]

## IV.

█ This court does not sit as the "self-constituted guardian of the Treasury." *Indian Towing Co. v. United States*, 350 U.S. 61, 69, 76 S.Ct. 122, 126, 100 L.Ed. 48 (1955). Section 2412(b) is, however, a waiver of sovereign immunity, and it must be strictly construed in the

government's favor. *See Ruckelshaus v. Sierra Club*, 462 U.S. 680, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983); *Block v. North Dakota ex rel. Board of University & School Lands*, 461 U.S. 273, 103 S.Ct. 1811, 1820, 75 L.Ed.2d 840 (1983); *McMahon v. United States*, 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951).[8] The panel's decision acknowledged that both parties' interpretations of the statute are persuasive. 727 F.2d at 725. Congress could have clearly made the United States liable for fees in constitutional deprivation actions but chose not to do so. *Id.* at 727. A concise amendment to section 2412(b) or a modification of section 1988 could have accomplished this purpose. Failure to take these specific steps casts doubt on whether Congress intended the result urged by Premachandra. *See Sierra Club*, 103 S.Ct. at 3277 n. 7, 3278 n. 8. The arguments and the conflicting judicial decisions reflect the doubt that shrouds the statute. This uncertainty must be resolved in the government's favor.[9]

## V.

█ Premachandra urges alternate grounds in support of his motion for attor-

6. The dissenting opinion of Judge Boochever also places great reliance on the Derfner testimony. It stresses the time sequence and argues that the Derfner testimony is the only reason in the legislative history for the amendment. 736 F.2d at 562 (Boochever, J., dissenting). Its conclusion that Derfner's suggestion is the only plausible explanation for congressional action does not address the omission of the "circumstances" language.

7. It is suggested in the dissenting opinion, *infra* at 643 that our interpretation is "unduly restrictive." Our holding, however, relates only to the government's liability under section 1983. Section 2412(b) will continue to expose federal officials to fee awards for violations of the other statutes listed in section 1988. *See, e.g., City of Milwaukee v. Saxbe*, 546 F.2d 693, 703 (7th Cir.1976) (federal officials acting under color of federal law subject to liability under 42 U.S.C. § 1981 (1982)), *Moriani v. Hunter*, 462 F.Supp. 353, 356 (S.D.N.Y.1978) (federal officials acting under color of federal law subject to liability under 42 U.S.C. § 1985 (1982)).

The dissent concedes that federal officials conspiring with state officials can be liable under section 1983 but laments that such liability is virtually nonexistent. The federal government was recently held liable for fees under

section 2412(b) precisely on this rationale. *Knights of the Ku Klux Klan v. East Baton Rouge Parish School Board*, 735 F.2d 895, 899–900 (5th Cir.1984). Conspiracies that make federal officials liable under section 1983 are not commonplace but nor are they unheard of. *See, e.g., Hampton v. Hanrahan*, 600 F.2d 600, 623 (7th Cir.1979), *rev'd in part on other grounds*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980); *Kletschka v. Driver*, 411 F.2d 436, 448–49 (2d Cir.1969).

8. With specific reference to the Equal Access to Justice Act, this court held recently that the "'limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied.'" *Monark Boat Co. v. NLRB*, 708 F.2d 1322, 1329 (8th Cir.1983) (quoting *Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957)). That the statute may be remedial does not alter this conclusion, for every statute waiving sovereign immunity is remedial. *Id.* at 1327.

9. In a report issued on September 6, 1984, the House Committee on the Judiciary made the following observation:

In a permanent provision of the Act which is unaffected by H.R. 5479–28 U.S.C.

neys' fees: that the government acted in bad faith and thus is liable for fees under the common law principles codified in section 2412(b); and that the government's actions were not "substantially justifiable" under section 2412(d). The latter ground will not be considered on the merits because it was not properly raised in the district court.[10] The former ground was raised but not decided. 548 F.Supp. at 121 n. 1. We think that the district court should have an opportunity to consider whether common law principles justify an award under section 2412(b).

The order granting attorneys' fees is reversed and the case is remanded for determination of whether the VA is liable for attorneys' fees under the common law.

FLOYD R. GIBSON, Senior Circuit Judge, with whom HEANEY, Circuit Judge, joins dissenting.

Relying on the reasoning set forth in the panel opinion, I dissent. *See Premachan-*

§ 2412(b)—a court is given discretion to award reasonable attorneys' fees and other costs in addition to those costs enumerated in section 2412(a) against the United States to the same extent that any other party—i.e., private, public, or governmental—may be liable under the common law or under terms of any statute which specifically provides for such an award. See, *Premachandra v. Mitts*, 727 F.2d 717 (8th Cir.1984). The provisions was [sic] designed to put the United States in the same position as other parties.

H.R.Rep. No. 992, 98th Cong., 2d Sess. 4 n. 3 (1984). Premachandra argues that this paragraph is a congressional ratification of the panel opinion. This conclusion is not obvious, given the general form of the citation.

Even assuming that the present Congress approves of the panel's result, our decision is unchanged. The issue here is the intent of the 96th Congress regarding section 2412(b), *see International Bhd. of Teamsters v. United States,* 431 U.S. 324, 354 n. 39, 97 S.Ct. 1843, 1864 n. 39, 52 L.Ed.2d 396 (1977), and the current report sheds no light on that intent. *See* Dickerson, *Statutory Interpretation: Dipping Into Legislative History,* 11 Hofstra L.Rev. 1125, 1146 (1983) ("[U]nder no theory of communication could post-enactment statements be considered part of context, because there is no way that either legislature or audience could have taken them into account during the process of enactment."); *see also Consumer Prod. Safety Comm'n v. GTE Sylvania,* 447 U.S. 102, 117–18, 100 S.Ct. 2051,

*dra v. Mitts,* 727 F.2d 717, 723–30 (8th Cir.1984). I write simply to highlight what I perceive to be the weaknesses in the majority opinion. The majority reaches its conclusion first by treating the language of the statute as clear. The language of the statute is far from clear. The cases cited by the majority, *see supra* at 636–37, which represent the varying conclusions reached by other courts, are evidence of the difficulty that the language of the statute presents. When a statute is ambiguous it clearly is appropriate for a court to look to the legislative history in order to discern the Congressional intent behind the statute. *See Lambur v. Yates,* 148 F.2d 137, 139 (8th Cir.1945). Indeed, a court may be obligated to do so. *See Ashley Drew & N. Ry. v. United Transp. Union,* 625 F.2d 1357, 1365 (8th Cir.1980). Not only is the majority opinion inconsistent with the Congressional intent behind the Equal Access to Justice Act, but the major-

2060–61, 64 L.Ed.2d 766 (1980) (reliance on post-enactment statements is "hazardous").

Finally, President Reagan's refusal to sign H.R. 5479, the bill that the report accompanied, deprives this statement of authoritative content. Presidential Memorandum of Disapproval (Nov. 9, 1984). We need not give weight to the reports of congressional committees on bills that do not become law.

10. 28 U.S.C. § 2412(d)(1)(B) (1982) provides:

A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses are computed. The party shall also allege that the position of the United States was not substantially justified.

Premachandra's failure to comply with this subsection bars an award under section 2412(d). His motion for attorneys' fees was filed on February 26, 1982, almost four months after this court entered a judgment on appeal. *See Monark Boat,* 708 F.2d at 1327–29. Moreover, the motion failed to specifically allege that the United States's position was not substantially justified.

ity could reach its conclusion only by completely disregarding the legislative history.

Second, the majority argues that Premachandra's interpretation of § 2412(b) could "render nugatory the 'substantially justified' and 'special circumstances' limits in section 2412(d),"[1] even though the majority concedes that not every violation of a federal statute will support a § 1983 action. *See infra* at 638. As noted in the panel opinion § 2412(d) was designed primarily to encourage small businesses to contest the unreasonable exercise of federal agency action. *See* H.R.Rep. No. 1418 at 9, 10; 1980 *U.S.Code Cong. & Ad.News* 4988. Accordingly, § 2412(d) was envisioned as a catch-all provision, encompassing a broad range of federal regulatory litigation not already covered by existing fee shifting statutes. *Id.* at 18; 1980 *U.S.Code Cong. & Ad.News* 4997.

Instead of adopting an interpretation of § 2412(b) which would leave it and § 2412(d) intact, the majority adopts an interpretation of § 2412(b) that, in effect, reads out of the statute the language at issue here. The statute provides as follows:

> The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

28 U.S.C. § 2312(b). Under the majority's interpretation the United States is *not* liable to the "same extent that any other party would be liable under ... any statute which specifically provides for such an award," because the federal government does not share the same liability that local governments bear under § 1983 and § 1988 for the unconstitutional acts of their officials. Under the majority's interpretation of § 2412(b), the only time the federal government would be liable for the unconstitutional acts of its officers is when those officers act in concert with a state official and thus meet the state action requirement of § 1983. This circumstance is one so rare as to be virtually non-existent. It is true, as the majority opinion notes, that a waiver of sovereign immunity should be construed strictly. A court should not, however, construe a remedial statute so strictly that, as a practical matter, recovery under the statute becomes unduly restrictive.

Finally, the majority goes to some length to explain why the Derfner testimony and the amendment of the statute subsequent to that testimony were irrelevant. Derfner's remarks centered around the liability of other governmental bodies in civil rights cases, and he suggested a change in the wording of the statute in order to put the federal government "completely on a par as far as the enforcement of important constitutional and statutory rights." *Award of Attorneys' Fees Against the Federal Government: Hearings on S. 265 Before the Subcomm. on Courts, Civil Liberties, and the Administration of Justice of the House Comm. on the Judiciary,* 96th Cong., 2d Sess. 100 (1980). The fact is that the statute was amended following Derfner's testimony, and it was amended in substantial accordance with his suggestion. Thus, it is a mischaracterization to say that there was Congressional silence regarding Derfner's testimony. While true literally, the amendment itself must be seen as a significant response to Derfner's suggestion. If that suggestion was in fact consistent with the intent behind the statute, then one would not suspect the amendment to be surrounded by a great deal of discussion. Indeed, one would expect discussion to have ensued if

---

1. The majority also voices the concern that litigants barred from recovery under § 2412(d) would be able to recover fees against the government under the panel's interpretation of § 2412(b). However, this court's experience with the overwhelming number of social security appeals in the last few years is evidence of the extent to which individuals' statutory rights may be violated without running afoul of the Constitution or § 1983. *See generally* Heaney, "Why the High Rate of Reversals in Social Security Disability Cases," 7 *Hamline L.Rev.* 1 (1984).

the amendment had been inconsistent with Congressional intent.

Further, the entire thrust of the legislative history lends significance to Derfner's testimony because his suggestions were consistent with the result Congress was trying to reach. At this point it cannot be disputed that the EAJA was intended to put the federal government and civil litigants on equal footing. *See Premachandra,* 727 F.2d at 727–28, 729. It is also clear that Congress intended this parity to exist with regard to civil rights actions. *See id.* at 729. That is, Congress sought to guarantee that citizens would not be deterred from vindicating their rights simply because of the enormous costs involved in civil rights litigation. Yet the majority opinion disregards this intent[2] and federal officials are as free under the majority opinion to violate the constitutional rights of citizens as they were before the EAJA was enacted. What then, could have been the purpose of enacting this waiver of sovereign immunity?

It is clear that the majority has made a policy decision regardless of Congressional intent, which is precisely what the federal government has been asking this court to do all along. From the perspective of public policy, the decision may or may not be a good one. That is beside the point, however, because courts of law are not supposed to be in the business of enacting public policy. This is true particularly where the Congress has, as a matter of public policy, decided to enact a law which would deter unconstitutional acts by federal officials and would serve as a basis of recovery for the victims of unconstitutional acts by federal officials acting in their official capacities.

I therefore, would affirm the district court and do respectfully dissent from the majority view in this opinion.

---

**2.** The majority argues that "the legislative history demonstrates a congressional reluctance to assign expansive liability for attorneys' fees to the government." *Supra* at 640–41. However, the authority relied on by the majority simply does not support this proposition. Indeed, a contrary interpretation could be gleaned easily from this authority.

[T]he bill ensures that the United States will be subject to the common law and statutory exceptions to the American rule regarding attorney fees. This change will allow a court in its discretion to award fees against the United States *to the same extent it may presently award such fees against other parties.*

*H.R.Rep. No. 1418,* 96th Cong., 2d Sess. 6, *reprinted in* 1980 *U.S.Code Cong. & Ad.News* 4984 (emphasis added).