In re the ESTATE OF Michael Patrick SMITH, et al., Plaintiffs,

and

People of the State of Colorado, et al., Plaintiffs-in-Intervention,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.

Civ. A. No. 75–M–539.

United States District Court, D. Colorado.

Aug. 9, 1985.

Kathleen Mullen, John Robert Holland, Denver, Colo., for plaintiffs.

Maurice Knaizer, Asst. Atty. Gen., Denver, Colo., for plaintiffs-in-intervention.

Shalom Brilliant, U.S. Dept. of Justice, Civ.Div., Washington, D.C., Janis E. Chapman, Asst. U.S. Atty., Denver, Colo., Vicki Shulkin, Office of Gen. Counsel, Dept. of Health and Human Services, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

On April 29, 1985, this court ordered the Secretary of Health and Human Services (the "Secretary") to file a plan of action with the court setting forth the procedures and timetable to be followed in performing the duty required by 42 U.S.C. §§ 1396–1396n as mandated by the Tenth Circuit Court of Appeals in *Estate of Smith v. Heckler*, 747 F.2d 583 (10th Cir.1984). On June 10, 1985, the Secretary filed that plan. On June 19, 1985, the plaintiffs and plaintiffs in intervention filed a response to the Secretary's plan and a motion for review proceedings. In addition, on May 14, 1985, the plaintiffs filed an application for attorney's fees, seeking $352,689 in fees.

### ATTORNEYS' FEES

The plaintiff assert that they are entitled to attorney's fees under (1) 42 U.S.C. § 1988, (2) 28 U.S.C. § 2412(b), and (3) 28 U.S.C. § 2412(d).

42 U.S.C. § 1988

42 U.S.C. § 1988 provides:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983,

1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

This suit was brought as a civil rights action seeking remedies under 42 U.S.C. § 1983 for alleged violations of constitutional rights. The defendants were the Secretary (then the Secretary of the Department of Health, Education and Welfare), the officers of the Colorado Department of Social Services and the Colorado Department of Health, and the owners and administrators of a nursing home. Initially it must be pointed out that by the time of trial, the claims against the state defendants had been dismissed by stipulation and the state defendants had become plaintiffs in intervention. *In Re Estate of Smith,* 557 F.Supp. 289, 290–91 (D.Colo.1983). In addition, this court ordered separate trials against the federal defendant and the nursing home defendants. The case against the federal defendant went to trial in May, 1982, and resulted in the judgment of dismissal of all claims against the Secretary reported at *In Re Estate of Smith, supra.* On appeal, the Tenth Circuit Court of Appeals reversed and remanded the case to this court for further proceedings, finding that the Secretary had violated her statutory duty "to promulgate regulations which will enable her to be informed as to whether the nursing facilities receiving federal Medicaid funds are actually providing high quality medical care." *Estate of Smith v. Heckler,* 747 F.2d at 591. It is for work done against the federal defendant that the plaintiffs now seek an award of attorneys' fees.

Under 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To state a claim for relief under § 1983, the plaintiff must show that the defendant was acting under color of state law and deprived the plaintiff of a right secured by the Constitution or laws of the United States. *Tongol v. Usery,* 601 F.2d 1091 (9th Cir.1979). Section 1983 "does not apply to federal officers acting under color of federal law." *Campbell v. Amax Coal Co.,* 610 F.2d 701, 702 (10th Cir.1979).

The Secretary was not acting under color of state law. The Tenth Circuit Court of Appeals stated in this case:

> The federal government has more than a passive role in handing out money to the states. The district court erred in finding that the burden of enforcing the substantive provisions of the Medicaid Act is on the states. The Secretary of Health and Human Services has a duty to establish a system to adequately inform herself as to whether the facilities receiving federal money are satisfying the requirements of the Act.

*Estate of Smith v. Heckler,* 747 F.2d at 589. As the only defendant in this case at the time of trial was the federal defendant, acting under color of federal law, the plaintiffs have not stated, nor could they state, a claim for relief under § 1983.

The plaintiffs argue that *Tongol v. Usery,* 575 F.Supp. 409 (N.D.Cal.1983) allows a fee award under § 1988 "against a federal defendant where the plaintiffs' § 1983 claim initially lay against both state and federal officials, as here." (Plaintiffs' Brief p. 4). The district court did award attorneys' fees against the federal defendant in that case stating that "where federal defendants are found to have acted in concert or conspiracy with state officials, courts have held that they could be liable as state actors under § 1983." *Id.* at 415. However, the award of attorneys' fees against the federal defendant in *Tongol* was later reversed on the ground that the case was no longer pending against the

federal defendant at the time the EAJA went into effect because the only unresolved issue was the nonfederal co-defendant's liability for attorneys' fees. *Tongol v. Donovan*, 762 F.2d 727 (9th Cir.1985).

As no claim may be stated against the Secretary under § 1983, the Secretary has not violated any of the provisions enumerated in § 1988, and the plaintiffs are not entitled to an award of attorneys' fees under § 1988.

**28 U.S.C. § 2412(b)**

■ The plaintiffs next assert that they are entitled to an award of attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Section (b) of that statute provides:

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency and any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

The plaintiffs rely principally on the decision in *Trujillo v. Heckler*, 587 F.Supp. 928 (D.Colo.1984), in which the Secretary was enjoined from terminating social security disability benefits under certain conditions. Judge Kane awarded attorneys' fees to the plaintiffs under 28 U.S.C. § 2412(b) on the basis that § 1988, as incorporated into the EAJA, allows for an award of attorneys' fees against the United States in suits for violations of constitutional or statutory violations under color of federal law. Judge Kane was guided in his decision by two cases, *Lauritzen v. Secretary of the Navy*, 546 F.Supp. 1221 (C.D.Calif.1982) and *Premachandra v. Mitts*, 727 F.2d 717 (8th Cir.1984), holding that a deprivation of constitutional rights by a federal officer acting

under color of federal law is "analogous" to a § 1983 claim, entitling a plaintiff to an award of attorneys' fees under § 1988, by virtue of the waiver of sovereign immunity provided in § 2412. Both of those decisions have since been reversed. *Lauritzen v. Lehman*, 736 F.2d 550 (9th Cir.1984); *Premachandra v. Mitts*, 753 F.2d 635 (8th Cir.1985) (en banc). The plaintiffs also cite *Boudin v. Thomas*, 732 F.2d 1107 (2nd Cir.1984) in support of their position. There the Second Circuit Court of Appeals stated that attorneys' fees could be awarded against the United States if the "fundamentally analogous" state habeas action would authorize an award of fees, also relying on the earlier decisions in *Lauritzen* and *Premachandra*.

The position advanced by the plaintiffs is against the clear weight of authority. The circuits which have directly addressed the issue of whether the federal government may be taxed with attorneys' fees for violations of federal statutes or deprivations of constitutional rights under color of federal law have held that 28 U.S.C. § 2412(b) does not authorize attorneys' fees against the federal government in actions "analogous" to § 1983 actions. *Unification Church v. Immigration & Naturalization Service*, 762 F.2d 1077 (D.C.Cir.1985); *Lauritzen*, 736 F.2d 550; *Premachandra*, 753 F.2d 635.

In *Premachandra*, the plaintiff's lawsuit was brought against federal officials for alleged violations of his fifth amendment rights. The plaintiffs point to the following language in *Premachandra* as distinguishing that case:

> Section 1983 is the only statute named in section 1988 that provides a remedy for violations of the Constitution. Because Premachandra did not allege that the defendants acted under color of state law, no section 1983 liability could be found.... Thus, the action was not brought to "enforce a provision" enumerated in section 1988. Consequently, there is no statute that specifically provides for attorneys' fees in this case, and section 2412(b) does not apply.

*Premachandra,* 753 F.2d at 637. Because the Secretary was not acting under color of state law for purposes of § 1983, this action was not brought to enforce a provision enumerated in § 1988. As no statute specifically provides for an award of attorneys' fees, § 2412(b) does not apply.

The plaintiffs also point to language in *Lauritzen* which reads: "[W]e hold that where the government has violated a particular substantive statute, and attorney's fees may be awarded against any other party for violation of that statute, the government is also liable for fees." *Lauritzen,* 736 F.2d at 559. The plaintiffs argue that since the state could be held liable for fees for violating the plaintiffs' rights under the Social Security Act, the federal government may as well. The plaintiffs do not say how the state could be held liable for attorneys' fees for violating the Act, unless by virtue of § 1988 through a § 1983 suit. While this quotation is somewhat confusing, it must be read in the context of the entire case in which the Ninth Circuit Court of Appeals held that a fee award was not allowable against the federal defendant acting under color of federal law where the claim was "analogous" to a § 1983 claim.

Finally, the plaintiffs point to language in *Unification Church, supra,* that no violation of state law was at issue, as distinguishing that case. No violation of state law was at issue with respect to the federal defendant in this case either.

As clearly explained by the District of Columbia Circuit Court of Appeals:

> Applying the government's interpretation of subsection (b) would mean that the United States would be liable for fees when it was a losing defendant in proceedings to enforce the statutes listed in section 1988. Applying this interpretation to this case, the United States is not liable for fees. It did not violate section 1983, because it did not violate the appellants' rights under color of state law, as required by the words of section 1983. It did violate the appellants' rights under color of federal law, but that creates no

cause of action under section 1983. Since it did not violate section 1983, it is not liable for fee awards under Section 1988, and thus not liable for fees awarded under subsection (b) of the [EAJA].

*Unification Church, supra,* at 1081.

The plaintiffs are not entitled to an award of attorneys' fees against the Secretary under 28 U.S.C. § 2412(b).

28 U.S.C. § 2412(d)

█  The plaintiffs' final argument is that they are entitled to an award of attorneys' fees under 28 U.S.C. § 2412(d)(1)(A) which provided, prior to its repeal effective October 1, 1984:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

In the Tenth Circuit, "the test of substantial justification is essentially one of reasonableness in both law and fact." *United States v. 2,116 Boxes of Boned Beef,* 726 F.2d 1481, 1486 (10th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 105, 83 L.Ed.2d 49 (1984). "[T]he position of the United States, for purposes of this Act, means the arguments relied upon by the government in litigation." *Id.* at 1487.

The plaintiffs argue that "[w]hile there may be room for substantial debate as to whether or not the federal defendant's legal position in the litigation was substantially justified, we submit that the factual position of the federal defendant lacked substantial justification." (Plaintiffs' brief, p. 7). The plaintiffs assert that

> [t]he record adduced at trial was replete with the federal defendant's own documents showing repeated acknowledgements and admissions of the failures of

the existing inspection system, and the need for a substitute system such as that plaintiffs sought. Nevertheless, the federal defendant not only contested the legal power of the court to effectuate a remedy, but equally important, contested the factual predicate of plaintiffs' case. Had the federal government simply taken the position that the court was not empowered to act, by admitting the factual circumstances, the trial could have been shortened or obviated, and the matter could have been determined on a motion for summary judgment, saving the court hundreds of hours of time, and the litigants and their attorneys substantial time, expense and delay.

(Plaintiffs' brief, pp. 7–8). The plaintiffs' attempt to place the blame on the defendants for the length and complexity of the trial is misplaced. In August, 1981, the federal defendant moved for judgment on the pleadings. In their opposition, the plaintiffs argued:

1. The court has been asked by Federal Defendant on repeated occasion [sic] both by formal motion and by oral request at hearings to decide the matters at issue on a summary judgment or motion to dismiss and now on a Motion for Judgment on the pleadings basis.

2. At each request counsel for the parties plaintiffs have pointed out often after written response, the court's previous denials of such motions on multiple occassions [sic] and the fact that the Court had indicated its clear intention not to decide the case without first providing the parties with a full opportunity to present the evidence that has been gathered in over 6 years of case preparation and for the reasons set forth in 5 and 6 below.

\* \* \* \* \* \*

5. As plaintiffs have pointed out all along the duty of the federal defendant in this case significantly involves, inter alia, an evidentiary analysis of the historical administrative construction of that duty by succeeding secretaries and a review of the agency's actions in interpreting and implementing its responsibilities thereunder. Substantial documentary and testimonial evidence bear directly on the duty and on the failures of the Department and the Secretary to discharge it. In the absence of its full presentation the Court can not fully evaluate the plaintiffs [sic] claims.

6. Likewise establishment of the breach of the Secretary's duties involves substantial documentary and testimonial evidence and can only be intelligently determined upon trial.

(Plaintiffs' Opposition to Motion for Judgment on the Pleadings, filed September 4, 1981). Thus it is clear that the plaintiffs felt that a full presentation of the factual evidence was necessary.

It is true that this court's decision was reversed by the Tenth Circuit Court of Appeals. However, in view of the fact that this court saw fit to rule in favor of the Secretary on every claim asserted against her, it cannot be said that the Secretary's position, both legal and factual, was not reasonable.

The plaintiffs are not entitled to an award of attorneys' fees against the Secretary under 28 U.S.C. § 2412(d), or under either of their other theories. The plaintiffs' application for attorneys' fees is denied.

As this court has determined that the plaintiffs are not entitled to an award of attorneys' fees against the Secretary, it is not necessary to address the parties' arguments concerning the reasonableness of the fees sought.

## THE SECRETARY'S PLAN OF ACTION PURSUANT TO ORDER ON REMAND

On June 10, 1985, pursuant to order of this court, the Secretary filed her Plan of Action Pursuant to Order on Remand ("Plan"). The plaintiffs and plaintiffs in intervention have filed a response to that Plan and a Motion for Review Proceedings.

The Tenth Circuit ordered this court to "compel" the Secretary's performance of her statutory duty, while admonishing this

court that it is not a "super agency" and "cannot control the specifics of how the Secretary satisfies the duty." *Estate of Smith v. Heckler*, 747 F.2d at 591. In its Order on Remand of April 29, 1985 ("Order"), this court ordered the Secretary to "file with this court a plan for action to be taken to perform the prescribed duty, specifically setting forth the procedures and timetable for proposing the required regulations and forms." The Secretary's Plan was in response to that Order.

In the Plan, the Secretary states that she is "currently in the process of studying changes to the survey method used by State survey agencies and federal surveyors," and that "[i]n order to comply with the duty defined by the Court of Appeals, she intends both to implement new survey procedures and forms and to propose appropriate revisions to the regulations to implement these changes." Her Plan involves two phases. She first plans to implement a new survey process. This would involve testing the new "outcome-oriented" survey process on an experimental basis, evaluating the test results and making necessary changes, developing a program to train surveyors, obtaining the final approval of the Department of Health and Human Services (HHS), training surveyors, obtaining the approval of the Office of Management and Budget (OMB), revising existing computer programs, revising the State Operations Manual, revising the Regional Office Manual, and, finally, implementing the new procedures in January, 1986—all prior to any formal rule making proceedings.

The second phase of the Secretary's Plan involves developing a Notice of Proposed Rulemaking, obtaining clearance from OMB, publishing the Notice of Proposed Rulemaking, providing a sixty-day comment period, evaluating the comments, preparing the final regulation, obtaining clearance of the final regulation from OMB, and publishing the final regulation, with a target date for final publication of August 15, 1986.

The plaintiffs and plaintiffs in intervention have filed a Motion for Review Proceedings in which they ask that this court:

A. Order Secretary Heckler to submit to the court and to plaintiffs and to plaintiffs-in-intervention within 10 days the alleged new "outcome-oriented survey process" which she intends to implement in January 1986 without any review by this court or any public rule making process;

B. Set an evidentiary hearing in November 1985 to review whether the Secretary's proposed survey process has even the threshold potential for complying with her statutory duty and the mandate of the Tenth Circuit Court of Appeals that "she promulgate regulations which will enable her to be informed as to whether the nursing facilities receiving federal Medicaid funds are actually providing high quality care," *Estate of Smith v. Heckler*, 747 F.2d 583, 591 (10th Cir.1984);

C. Establish a discovery schedule which will allow all parties access to relevant information regarding the assumptions of the Secretary's proposed survey system, any results of field tests or other research related to the proposed survey system, any plans the Secretary has for further field testing, research, or refinement of the survey process, and any critiques of the proposed system which are received by the Department of Health and Human Services (HHS) or which will be presented to the court by any party during the review proceeding requested herein;

D. Allow the Secretary, plaintiffs and plaintiffs-in-intervention to present expert testimony and other evidence to the court regarding the legal sufficiency of the Secretary's proposed survey system prior to the implementation date for the system in January 1986;

E. Allow any other interested *amicus* designated by the court to comment on the proposed survey system; and

F. On the basis of the court's own review of the Secretary's proposed survey system and evidence presented at the

review proceeding, rule prior to the January 1986 implementation date whether the Secretary's proposed survey system complies with her statutory obligation and the mandate of the Tenth Circuit. (Plaintiffs' and Plaintiffs-in-intervention's Response to Secretary's Plan, pp. 1–2).

The plaintiffs and plaintiffs in intervention argue that the Secretary's Plan is insufficient for several reasons. First, they argue that the Plan cannot support the implementation of a new survey process absent court review and a public rule making process consistent with the Administrative Procedure Act ("APA"). They assert that this is so because the Plan provides no meaningful description of the proposed survey process and no definition of an "outcome-oriented" system, and depending on its definition, an "outcome oriented" system may or may not comply with the Tenth Circuit's mandate. They also assert that the Plan, by providing no judicial review of the survey process to be implemented in January, 1986, excludes the plaintiffs, the plaintiff class, and the plaintiffs in intervention from having any input into the ultimate remedy. The plaintiffs claim that the Plan violates the APA because any public input will be after the proposed survey process has been implemented, and that the Secretary's proposed target dates are illusory, because the key dates contain conditions, the occurrence of which will permit the Secretary to revise the plan.

Second, the plaintiffs argue that the Secretary's Plan and the failure of HHS to implement the required type of survey system during the past ten years require court intervention to protect nursing home residents and to bring survey system into compliance with the mandate of the Tenth Circuit. Third, the plaintiffs argue that new evidence will be available this fall which could help the court determine "whether the survey system ultimately proposed by the Secretary is sound from a regulatory standpoint and meets the requirements of the Medicaid Act as articulated by the Tenth Circuit." (Plaintiffs' Response, p. 4).

In response, the Secretary argues that the "Order on Remand called only for a plan setting forth a procedure and timetable for *developing* new forms and regulations. It did not call for a description of the new forms and regulations in the Plan itself ..." (Defendant's Opposition, p. 2; emphasis in original). This argument is somewhat disingenuous, as the Secretary was ordered to specifically set forth the procedures and timetable as part of the "plan for action to be taken to perform the ... duty" prescribed by the Tenth Circuit. Second, the Secretary argues that the Order did not indicate that the Plan would provide a basis for judicial review of the substance of the proposed regulations and forms. This court did indicate, however, that it does not intend "to remain passive until some final agency action has been taken." In addition, the Secretary argues that this court's review of the Secretary's actions is limited to the administrative record, that discovery must be confined to the production of that record, and that the scope of this court's review precludes an evidentiary hearing.

The evidentiary hearing, discovery schedule, and review of the proposed regulations and forms prior to public rule making sought by the plaintiffs are beyond the authority of this court. "[O]rdinarily review of administrative decisions is to be confined to 'consideration of the decision of the agency ... and of the evidence on which it was based.' ... '[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.'" *Federal Power Commission v. Transcontinental Gas Pipe Line Corp.*, 423 U.S. 326, 331, 96 S.Ct. 579, 582, 46 L.Ed.2d 533 (1976) (citations omitted). Furthermore, discovery in suits challenging an agency regulation "is usually limited to the administrative record that was before the agency when the final rule was adopted." *Texas Steel Co. v. Donovan*, 93 F.R.D. 619, 620–21 (N.D.Tex.1982).

The plaintiffs argue that the court has equitable powers to establish a schedule

for administrative action. This is different from reviewing the proposed regulations and forms. "The remanding court is vested with equity powers and, while it may not '[intrude] upon the administrative province, it may adjust its relief to the exigencies of the case in accordance with the equitable principles governing judicial action.'" *Zambrana v. Califano*, 651 F.2d 842, 844 (2nd Cir.1981) (quoting *Ford Motor Co. v. NLRB*, 305 U.S. 364, 373, 59 S.Ct. 301, 307, 83 L.Ed. 221 (1939)). As one of the court's equitable powers, it may set a time limit for administrative action. *Id. See also, Engelhart v. Schweiker*, 558 F.Supp. 112 (D.S.D.1983) (ordering the Secretary to conduct an expedited de novo hearing following a decision to discontinue disability payments); *Natural Resources Defense Council, Inc. v. Train*, 510 F.2d 692 (D.C.Cir. 1974) (finding that the trial court acted reasonably in incorporating a publication schedule into its order that the EPA publish effluent limitation guidelines within one year to compel performance of the EPA's statutory duty).

The plaintiffs also cite *Blankenship v. Secretary of Health & Human Services*, 587 F.2d 329 (6th Cir.1978) in support of their motion. In *Blankenship*, the plaintiffs challenged delays by the Social Security Administration in scheduling administrative hearings. The district court ordered the Secretary to schedule hearings within 90 days of application for a hearing. The Sixth Circuit Court of Appeals found that claimants had a right to a hearing in a "reasonable" time and that the judicially imposed 90-day time limit was not appropriate and was inconsistent with the principle of separation of powers. The court remanded the case to the district court with instructions to order the Secretary to develop regulations to remedy the problem of unreasonable delay and submit them to the district court for review of their reasonableness before publishing them as proposed or final regulations.

On remand, the district court established a discovery and briefing schedule on the issue of the reasonableness of the regulations proposed by the Secretary, while expressing considerable concern over the scope of the court's authority to review the matters before it. *Blankenship v. Secretary of Health & Human Services*, 522 F.Supp. 618 (W.D.Ky.1981). The Sixth Circuit's affirmance of the time limitations eventually established by the district court was vacated and the case remanded to the district court for reconsideration in light of *Heckler v. Day*, 467 U.S. 104, 104 S.Ct. 2249, 2258, 81 L.Ed.2d 88 (1984) ("[I]t would be an unwarranted judicial intrusion into this pervasively regulated area for federal courts to issue injunctions imposing deadlines with respect to future disability claims." *Id.* at ——, 104 S.Ct. at 2258.)

This court does not have the authority to review the proposed regulations and forms prior to a public rule making process, and the motion of the plaintiffs and the plaintiffs in intervention for review proceedings must be denied. The court, however, restates its position that it will not sit passively by pending final agency action, particularly under the circumstances of this case where the Secretary proposes to completely implement a new survey process without any opportunity for public participation. The Secretary asserts that "while the Secretary's plan contemplates certain actions between now and the end of this calendar year, it contemplates *final* action in stages beginning in January 1986; and plaintiffs offer no cogent reason why final action or substantive review thereof should occur sooner." (Defendant's Opposition to Plaintiffs' Motion, p. 3; emphasis in original). Neither does the Secretary offer any compelling reason why a new survey system must be funded, implemented, and tested prior to any public rule making process.

This court was ordered to "compel" the Secretary to perform her prescribed duty. That duty was to "promulgate regulations which will enable her to be informed as to whether the nursing facilities receiving federal Medicaid funds are actually providing high quality medical care." *Estate of Smith v. Heckler*, 747 F.2d at 591. As

noted by the Tenth Circuit, the Secretary has broad discretion as to how to accomplish that duty. This court interprets that discretion as relating to the content of the proposed regulations. Accordingly, it is

ORDERED, that by October 31, 1985, the Secretary will develop and publish a notice of proposed rule making, consistent with the requirements of the APA, regarding a new survey system which will enable the Secretary to perform the duty prescribed by the Tenth Circuit Court of Appeals, and it is

FURTHER ORDERED, that the plaintiffs' application for attorneys' fees is denied and the motion of the plaintiffs and the plaintiffs in intervention for review proceedings is denied.