# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1424

_____

| | | |
|---|---|---|
| Michael Adams, individually and on behalf of Randy Harris and Derrick Harris, minors; Floyd Jones, individually and as natural guardian and next friend of Randy Harris and Derrick Harris, minors; Wanda Jones, individually and as natural guardian and next friend of Randy Harris and Derrick Harris, minors; Derrick Harris; Randy Harris, | * * * * * * * * * | |
| Plaintiffs-Appellants. | * * | |
| v. | * * | |
| Boy Scouts of America-Chickasaw Council, | * * | |
| Defendant-Appellee. | * * * | Appeal from the United States District Court for the Eastern District of Arkansas |
| Kiwanis Club of Memphis; T.J. Powell, individually and in his capacity as Sharp County Sheriff, aka Sonny Powell; | * * * * | |
| Defendants. | * * | |
| Dewayne Halcom, Sharp County Deputy Sheriff, | * * * | |
| Defendant-Appellee. | * * | |
| Cherokee Village SID, | * * | |
| Defendant. | * | |

_____

No. 00-2064

_____

| | |
|---|---|
| Michael Adams, individually and on behalf of Randy Harris and Derrick Harris, minors; Floyd Jones, individually and as natural guardian and next friend of Randy Harris and Derrick Harris, minors; Wanda Jones, individually and as natural guardian and next friend of Randy Harris and Derrick Harris, minors, | * * * * * * * * * |
| | * |
| Plaintiffs-Appellants, | * |
| | * |
| v. | * |
| | * |
| Boy Scouts of America, Inc., Chickasaw Council, | * * |
| | * |
| Defendant-Appellee. | * |
| | * |
| Kiwanis Club of Memphis; T.J. Powell, individually and in his capacity as Sharp County Sheriff; also known as Sonny Powell, Dewayne Halcom, Sharp County Deputy Sheriff; Cherokee Village SID, | * * * * * * |
| Defendants. | * |

_____

Submitted:  April 13, 2001

Filed:  November 21, 2001

_____

-2-

_____

Before McMILLIAN, LOKEN and HANSEN, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Michael Adams, Floyd Jones, Wanda Jones, Derrick Harris, and Randy Harris (collectively "appellants"), each of whom is African-American, appeal from a final order entered in the United States District Court[1] for the Eastern District of Arkansas granting summary judgment in favor of the Boy Scouts of America, Inc. – Chickasaw Council (hereinafter "Boy Scouts Chickasaw Council") and Dewayne Halcom (together "appellees") on appellants' claims alleging racial discrimination in violation of their federal constitutional and statutory rights. Adams v. Boy Scouts of America – Chickasaw Council, No. 3CV98313 (E.D. Ark. Jan. 5, 2000) (order granting summary judgment) (hereinafter "slip op."). For reversal, appellants argue that the district court erred in dismissing their claims pursuant to 42 U.S.C. §§ 1981, 1983, 1985(3), 1986, and 2000a on grounds that they failed as a matter of law to establish any triable claims. Appellants also appeal from an order of the district court assessing costs against them in the amount of $2,056.51. Id. (Mar. 15, 2000) (order imposing costs). For reversal of that order, appellants rely on their challenge to the underlying judgment and additionally argue that, even if the judgment is affirmed, the award of costs should be vacated as inequitable in light of the relative financial positions of the parties. For the reasons stated below, we affirm the judgment of the district court and affirm the award of costs.

_____

[1]The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

-3-

## Jurisdiction

Jurisdiction in the district court was proper based upon 28 U.S.C. §§ 1331, 1343. Jurisdiction on appeal is proper based upon 28 U.S.C. § 1291. The notices of appeal were timely filed pursuant to Fed. R. App. P. 4(a).

## Background

The Kiwanis Club of Memphis sponsored a one-week summer camp ("the camp") which began on Monday, July 20, 1997, and was held at the Kia Kima Scout Reservation in Hardy, Arkansas, under the direction of the Boy Scouts Chickasaw Council. The camp was attended by 68 inner-city youths ("campers") and several adult volunteers. Approximately seventy percent of the campers were African-American. Slip op. at 1-2.

Michael Adams attended the camp as a volunteer overseer and observer for the Kiwanis Club of Memphis. Floyd Jones attended as a parent volunteer. Randy Harris and Derrick Harris, Floyd Jones's two stepsons, were campers. Wanda Jones did not attend the camp; she is the wife of Floyd Jones and the mother of Randy Harris and Derrick Harris.[2] Id.

Based upon events allegedly occurring at, and in connection with, the camp, appellants brought the present action in the district court against appellees and the Kiwanis Club of Memphis, T.J. "Sonny" Powell (as Sheriff of Sharp County), the Cherokee Village Securities Officers, and "John Doe(s)." The "John Doe(s)" were described as "employees and/or agents of the Boy Scouts of America who were camp directors and administrators as well as teen counselors at Camp Kia Kima Reservation

---

[2]Where appropriate from the context, the term "appellants" shall refer to all of the plaintiffs-appellants except for Wanda Jones, who did not attend the camp.

-4-

and deputy sheriffs of Sharp County, Arkansas." Appellants' Appendix at 18 (complaint ¶ VII).

The complaint generally alleged that appellants and many other campers were subjected to racism and other forms of mistreatment at the camp and that the campers were inadequately supervised. See id. at 19-21 (¶¶ IX-XIV). In addition to asserting claims under 42 U.S.C. §§ 1981, 1983, 1985(3), 1986, and 2000a, the complaint also purported to assert claims under state common law and the Thirteenth and Fourteenth Amendments, which are not at issue in the present appeal.

In particular, the complaint alleged the following. During the operation of the camp, male Caucasian camp counselors forced campers to eat charred wood under threat that their breakfast would be withheld, forced campers to drink lake water, left campers in the woods unsupervised, and placed ammonium carbonate under campers' noses while they slept. Id. (¶ IX). Male camp counselors subjected female campers to "lurid comments and conduct" and made female campers shower in the boys' shower area while boys were present in the area, then beat on the shower wall forcing the female campers to run out of the showers half-dressed. Id. (¶ X). On or about July 23, 1997, Adams "reported several incidents to camp administrators" and was told that his claims were not true. Id. (¶ XI).[3] Adams also complained that camp officials and counselors were inadequately trained and prepared for the camp. Id. On or about July 25, 1997, Adams and ten campers told camp administrators about specific unacceptable behavior by camp counselors and requested either adult supervision for the campers or transportation back to Memphis. Id. (¶ XII). Adams was informed that he would be the only one leaving the camp and was ordered to

---

[3]According to the district court's order granting summary judgment, Adams did not report any incidents or problems to Lisa Bell or Howard Herlihy, his designated contacts for the Kiwanis Club of Memphis. Adams v. Boy Scouts of America – Chickasaw Council, No. 3CV98313, slip op. at 2 n.1 (E.D. Ark. Jan. 5, 2000) (order granting summary judgment) (hereinafter "slip op.") (citing Adams's deposition at 85, 110, 214).

pack his belongings.  Id.  Later that evening, Adams was forced by Cherokee Village security officers to leave in the camp van.  The camp director drove the van and was accompanied by another camp representative.  Floyd Jones, Randy Harris, and Derrick Harris left with Adams.  Id.

The complaint further alleged that, when the van reached Ashflat, Arkansas, it was met by a sheriff's patrol car and escorted to the sheriff's department in Ashflat.[4] Id.  At the sheriff's department, a deputy sheriff forced Adams to exit the van, and the camp director told Adams that he would have to find his own transportation back to Memphis.  Floyd Jones, Randy Harris, and Derrick Harris also got out of the van at the sheriff's department.  Id. (¶ XIII).

The complaint additionally alleged that a sign bearing the letters "KKK" hung on the wall in the camp office, even though the name of the reservation was "Kia Kima Scout Reservation."[5]  Id. (¶ XIV).  According to the complaint, "[t]he presence of this racist symbol caused [appellants] great concern and fear as well as mental anguish."  Id.

Appellants sought $5,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, injunctive relief, declaratory judgment, attorney's fees, and expenses.  Id. at 25-26 (prayer for relief).

---

[4]The district court observed: "[Appellants] have also shown that someone at the camp called the Sheriff's department and told them to meet the council's van as it approach[ed] Ashflat, Arkansas.  The Sheriff's vehicle was obviously waiting for the van and flashed its lights upon its approach before escorting the vehicle to the Sheriff's department."  Id. at 8.

[5]The district court described the item bearing the letters "KKK" as a "sash" and noted that it was hung next to an ornamental paddle bearing the camp's former name: "Kamp Kia Kima."  Id. at 6 n.3

Appellees moved for summary judgment, and the district court granted their motion on January 5, 2000. The district court determined that the following facts were not in genuine dispute. The alleged mistreatment and neglect of the campers did not directly affect any of the named plaintiffs (i.e., appellants), and most of the alleged problems at the camp equally affected Caucasian and African-American campers. See slip op. at 2 (citing Adams's deposition at 83-84, 108-09).[6] On July 25, 1997, after Adams and the ten campers complained to the camp administrators, Cherokee Village security officers were called to the scene; Adams was told that he had to leave the camp, to which he responded that "he had no problem with that" and "was ready to leave." Id. at 3 (citing Adams's deposition at 168). The camp administrators then changed their minds and told Adams he could stay. Id. However, later that evening, after an argument arose between Adams and camp administrators, Adams was again told to leave, and security officers were again called in for assistance. The security officers never touched Adams and were present only in case Adams refused to leave peacefully. Id. Jones and his two stepsons, Randy Harris and Derrick Harris, were not asked to leave, but left voluntarily. Id. (citing Floyd Jones's deposition at 120-21).[7] After the camp van had been escorted to the sheriff's department and Adams was told to get out of the van, the camp director offered to drive Floyd Jones and his stepsons back to Memphis; they declined the offer, however, and together with Adams arranged their own transportation back to Memphis. Id. at 4.

---

[6]For these reasons, the district court had previously ordered that appellants' evidence about the alleged problems at the camp be limited to: evidence of "two alleged incidents of racial slurs," evidence concerning "the presence of the 'KKK' sash which hung in a public area of the camp," and evidence "that some campers (both Caucasian and African-American) were made to drink dirty water in an allegedly racially motivated environment." See id. at 2.

[7]However, Floyd Jones indicated in his affidavit that he elected to leave because the camp's racially hostile environment made him feel unsafe. Id. at 3 n.2 (citing Floyd Jones's affidavit).

In analyzing the legal issues raised by appellees' motion for summary judgment, the district court first determined that, even if a genuine issue of fact existed as to whether race was a motivating factor in the Boy Scouts Chickasaw Council's decision to ask Adams to leave the camp, that issue of fact was nevertheless not outcome determinative. See id. at 6. In other words, the district court held that there were other legal shortcomings regarding essential aspects of appellants' claims which warranted judgment for appellees as a matter of law.

As to appellants' claims under 42 U.S.C. §§ 1985(3) and 1986, the district court noted that there was no evidence of a race-based conspiracy – that is, a conspiracy to deprive appellants of their equal protection rights – an essential element of each of the § 1985(3) and § 1986 claims.[8] See id. at 7, 8-9.

---

[8]Title 42 U.S.C. § 1985(3) provides in relevant part:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws . . . [and] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

A claim under 42 U.S.C. § 1986 (action for neglect to prevent commission of § 1985 violation) is dependent upon a valid § 1985 claim. See Lewellen v. Raff, 843 F.2d 1103, 1116 (8th Cir. 1988), cert. denied, 489 U.S. 1033 (1989).

As to appellants' claims under the equal benefits clause of 42 U.S.C. § 1981[9] and under § 1983,[10] the district court noted that each required a showing of state action. See id. at 7 & n.5, 10 & n.9. The district court then concluded that, because the Boy Scouts Chickasaw Council was not a state actor and there was no evidence of a racial conspiracy between the Boy Scouts Chickasaw Council and Halcom or the sheriff's department, state action could not be imputed to the Boy Scouts Chickasaw Council. See id. at 10. Although Halcom was a state actor, the district court held that he could not be liable under §§ 1981 or 1983 because there was no evidence that his actions were motivated by race. See id. at 9. The district court explained that no reasonable fact finder could conclude that Halcom's explanation for his actions – that

---

[9]Title 42 U.S.C. § 1981(a) provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

The district court specifically noted that appellants were relying on the equal benefits clause of § 1981, not the "make and enforce contracts" clause. See slip op. at 7 n.5.

[10]Title 42 U.S.C. § 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

he was responding to a call for assistance because Adams was trespassing and causing a disturbance in the van – was a pretext for racial discrimination. See id.

Finally, as to appellants' claim under 42 U.S.C. § 2000a (prohibiting discrimination or segregation in places of public accommodation), the district court held that, even assuming for the sake of argument that the camp was a place of public accommodation, appellants had not made the necessary showing of disparate treatment to support their claim of racial discrimination. See id. at 11-12. ("[appellants] have not shown another person whose circumstances were similar to theirs and who received more favorable treatment than they did.").[11]

Judgment was entered for appellees. Thereafter, by order dated March 15, 2000, the district court partially granted the Boy Scouts Chickasaw Council's request for costs. Appellants were ordered to pay $2,056.51. These appeals followed.

**Discussion**

We review a grant of summary judgment *de novo*. The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly

---

[11]The district court also reasoned that appellants' claim under 42 U.S.C. § 2000a was subject to dismissal because appellants failed to request injunctive relief, the sole remedy available under § 2000a. See slip op. at 11. Appellants argue on appeal, and appellees agree, that the district court was mistaken on this point because injunctive relief was requested in the complaint. See Appellants' Appendix at 26.

-10-

appropriate. See Crain v. Board of Police Comm'rs, 920 F.2d 1402, 1405-06 (8th Cir. 1990).

Appellants argue that the district court erred in granting summary judgment for appellees because there are genuine issues of material fact precluding judgment as a matter of law. Appellants generally contend that they presented sufficient evidence to support an inference of appellees' racial animus, for purposes of proving each of the claims at issue in the present appeal. Appellants highlight "the use of racial slurs, the presence of a sash bearing the letters 'KKK,' and suspicious circumstances surrounding the removal of [appellants] from the camp." Brief for Appellants at 7. Regarding the "KKK" sash, appellants maintain that it should not matter that the camp was once named Kamp Kia Kima, because "KKK has long been a symbol for black inferiority and white supremacy." Id. at 13.

Regarding their § 1981 claim, appellants now argue that, not only do they have a claim under § 1981's "full and equal benefit" clause (which they have consistently asserted), but also they have a claim under the "make and enforce contracts" clause of § 1981 because they "were in an implied contract with [the Boy Scouts Chickasaw Council] through the Kiwanis Club." Id. at 14. To the extent the district court relied upon the lack of state action as a basis for dismissing the § 1981 claim against the Boy Scouts Chickasaw Council, appellants maintain that the district court erred in adopting the holding in Mahone v. Waddle, 564 F.2d 1018, 1029 (3d Cir. 1977) (Mahone) (requiring state action for § 1981 claim under the equal benefits clause), cert. denied, 438 U.S. 904 (1978). In any event, appellants argue, the record sufficiently supports a finding that the Boy Scouts Chickasaw Council was acting under color of state law because law enforcement officers "communicated and acted in concert" with camp administrators. In particular, appellants contend, law enforcement officers helped to remove appellants from the camp, met the camp van on the road and escorted it to the sheriff's department, forcibly ordered Adams out of the van, and told the camp director that he had no obligation to take Adams back to Memphis. Appellants maintain that the Boy Scouts Chickasaw Council may be

-11-

deemed a state actor under either the "symbiotic relationship" test, see Brief for Appellants at 11 (citing Burton v. Wilmington Parking Authority, 365 U.S. 715, 725 (1961) ("The State has so far insinuated itself into a position of interdependence with [a private party] that it must be recognized as a joint participant in the challenged activity, which, on that account, cannot be considered to have been so 'purely private' as to fall without the scope of the Fourteenth Amendment.")), or the "nexus" test, see id. at 12 (citing Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974) ("[T]he inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.")). In sum, appellants argue that they have sufficiently demonstrated state action by both the Boys Scouts Chickasaw Council and Halcom, that they have sufficiently demonstrated deprivations of their Thirteenth and Fourteenth Amendment rights, and that the district court therefore erred in dismissing their §§ 1981 and 1983 claims on summary judgment. See id. at 9-15.

To the extent the district court held that there was insufficient evidence of a conspiracy, as a basis for granting summary judgment on the §§ 1985(3) and 1986 claims, appellants argue that a fact finder could reasonably infer that the Boy Scouts Chickasaw Council and the sheriff's department had engaged in a conspiracy based on racial hostility. Appellants maintain that there were numerous communications between camp administrators and the sheriff's department, and the sheriff's department facilitated the removal of Adams from the camp and the camp van, even though none of the deputy sheriffs ever observed hostile behavior by Adams. Appellants contend that Halcom himself took specific steps in furtherance of this conspiracy. For example, appellants argue, Halcom flashed his headlights as a signal to the approaching camp van, used his gun to force Adams out of the van, and told Adams that he would have to find his own way back to Memphis.

Finally, as to the § 2000a claim, appellants assert, among other arguments, that the district court committed reversible error by using the burden-shifting analysis most commonly used in employment discrimination cases. In this non-employment

case, appellants contend, "[d]iscrimination may be shown by proving [appellees'] racial animus through their conduct which violated [appellants'] constitutional and civil rights." Brief for Appellants at 21.[12]

We have carefully reviewed the parties' arguments and the record on appeal. At the outset, we are compelled to point out that appellants, in their brief on appeal, have mischaracterized the evidence supporting their allegations of appellees' racial animosity. In particular, appellants now attribute to camp administrators racial slurs which were actually presented in the record as comments made by unidentified speakers and merely overheard by Adams. Compare Appellants' Appendix at 211 (affidavit of Michael Adams) ("On several occasions I heard racial slurs such as 'we are going to teach this nigger a lesson,' 'niggers need to be outside anyway,' and a camp administrator said to me, "nobody's leaving this camp but your black ass.'") with Brief for Appellants at 13 ("It can be inferred that [appellees] have a disliking for Blacks in general when the symbol [KKK] is present and [the Boy Scouts Chickasaw] Council refers to Blacks as 'niggers' as camp administrators did several times throughout the camp. Michael Adams heard camp administrators say, 'Niggers need to be outside anyway.' (A[ppellants' Appendix at] 211) Camp administrators told Michael Adams that 'the only person leaving is your black ass.' (A[ppellants' Appendix at] 211).").

---

[12]In addition, appellants argue that the district court erred in *sua sponte* holding that the claim was insufficient as a matter of law because appellants did not request injunctive relief. As noted above, appellees concede that error. Appellants also cited in their brief the appellate court decision affirmed by the New Jersey Supreme Court's decision in Dale v. Boy Scouts of America, 734 A.2d 1196 (N.J. 1999), for the proposition that the camp, which is operated as part of the Boy Scouts organization, is a place of public accommodation. However, after the filing of appellants' brief, the New Jersey Supreme Court's decision was reversed by the United States Supreme Court on First Amendment grounds, in Boy Scouts of America v. Dale, 530 U.S. 640 (2000).

Beginning with appellants' § 1981 claim, we first note that, notwithstanding appellants' effort *now* to assert the contracts clause as a basis for their claim under 42 U.S.C. § 1981, appellants are bound by their decision to rely only on the equal benefits clause of § 1981 in the district court. See slip op. at 7 n.5 ("Plaintiffs are attempting to use the 'equal benefits' clause, as opposed to its more commonly used 'contracts' clause."). Regarding appellants' argument that the district court erroneously adopted the holding in Mahone, 564 F.2d at 1029, that state action is a requirement of a claim under § 1981's equal benefits clause, we recognize that this court had not, until just recently, squarely adopted Mahone's holding – although we had, on several occasions, cited Mahone with approval. See, e.g., Griffin v. Pinkerton's Inc., 173 F.3d 661, 664 (8th Cir. 1999); Premachandra v. Mitts, 753 F.2d 635, 640 n.5 (8th Cir. 1985); Taylor v. Jones, 653 F.2d 1193, 1205 n.10 (8th Cir. 1981). However, this court has now directly addressed the issue. For purposes of asserting a claim under 42 U.S.C. § 1981, "'[b]ecause the state is the sole source of the law, it is only the state that can deny the full and equal benefit of the law.'" Youngblood v. Hy-Vee Food Stores, Inc., 266 F.3d 851, 855 (8th Cir. 2001) (quoting Chapman v. Higbee Co., 256 F.3d 416, 420 (6th Cir. 2001) (citing Mahone, 564 F.2d at 1029)).

We also disagree with appellants' contention that state action can be imputed to the Boy Scouts Chickasaw Council under the "symbiotic relationship" test or the "nexus approach." There simply is no evidence in the present case that the state, through a sheriff's department or anyone else, situated itself in a position of interdependence with the camp administrators or was so connected with the actions of the camp administrators, that the conduct in question may be attributed to the state. Because the Boy Scouts Chickasaw Council was not acting under color of state law, appellants' claims against that party under §§ 1981 and 1983 fail as a matter of law. The record regarding the actions of law enforcement officers, including Halcom, merely shows that the officers were responding to calls for assistance in removing an allegedly trespassing and disruptive individual. A fact finder could not reasonably infer from the evidence that Halcom, or any other law enforcement officer, was acting

on the basis of appellants' race.  This absence of proof defeats not only appellants' §§ 1981 and 1983 claims against Halcom, but also appellants' claims under §§ 1985(3) and 1986 against both Halcom and the Boy Scouts Chickasaw Council. Without evidence that Halcom's actions were in any way motivated by appellants' race, it cannot reasonably be inferred that Halcom and the Boy Scouts Chickasaw Council engaged in a conspiracy motivated by racial discrimination.

We now turn to appellants' claim under 42 U.S.C. § 2000a, alleging denial of equal access to a place of public accommodation based on racial discrimination. Appellees urge us to affirm the summary judgment disposition not only on the basis of the district court's reasoning, but also because the camp is not a place of public accommodation.  Like the district court, we find it unnecessary to decide whether the camp was a place of public accommodation because appellants' claim under § 2000a fails for other reasons.  As to Floyd Jones and his stepsons, the § 2000a claim fails because the evidence establishes beyond genuine dispute that they left the camp voluntarily; they were not asked to leave but did so in support of Adams.  As to Adams, the § 2000a claim fails because the evidence does not adequately support the inference that race was a motivating factor in the decision to have him removed from the camp.  When asked during his deposition about the racially charged remarks he allegedly heard while at the camp, Adams could not specifically recall who made the remarks or when they were made.  See Boy Scouts' Separate Appendix at 46-48 (deposition of Michael Adams at 96-98).  While he did present evidence that some of the teenage camp counselors made racially offensive jokes and comments, see id., and that an unnamed camp administrator directed a racial slur at him, see id. at 47; Appellants' Appendix at 211 (affidavit of Michael Adams) ("a camp administrator said to me, "nobody's leaving this camp but your black ass'"), he did not present evidence identifying that particular camp administrator or suggesting that any of the individuals making the offensive remarks had a role in the decision to remove him from the camp.  Accordingly, the evidence is not sufficiently specific to establish a genuine issue of material fact.  See Herring v. Canada Life Assurance Co., 207 F.3d 1026, 1030 (8th Cir. 2000) (in order to withstand a motion for summary judgment,

opposing party must identify "specific facts" from which a genuine issue of material fact can be inferred).

For the reasons stated, we affirm the district court's dismissal on summary judgment of appellants' statutory claims. We further hold that the district court did not abuse its discretion in ordering appellants to pay $2,056.51 in costs. Appellants have demonstrated no legal or equitable basis for reversing that order.

## Conclusion

The judgment of the district court and the order to pay costs are affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.